UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22847-CIV-ALTONAGA

NOLMAN ANTONIO BARRERA SOLANO,
and all others similarly situated under 29 U.S.C. § 216(B),

    Plaintiff,

v.

A NAVAS PARTY PRODUCTION, INC., JOSE
NAVARRETE, and FRANCISCO A. NAVARRETE,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW

Defendants, through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, file this Motion for Final Summary Judgment, and a separate Statement of Undisputed Material Facts is separately filed (hereinafter cited as "Facts ¶ ___"), and in support state:

### BACKGROUND

The Plaintiff has filed an Amended Complaint setting forth one substantive count, pursuant to § 207 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* for failure to pay overtime; there are no allegations that Plaintiff worked off of the clock, or had to work certain hours without pay (*See generally*, *Complaint*), though there is a single reference to Florida's minimum wage act and the minimum wage provision in the FLSA. *See id.* ¶ 7. Plaintiff seeks back wages, liquidated damages, prejudgment interest, attorneys' fees, and litigation expenses. *See id., ad damnum clause.*

The corporate Defendant is a company that provides party planning to its customers. Summary judgment is warranted on behalf of the Defendants on the following grounds: 1) the doctrine of *in pari delicto*, because the Plaintiff is an illegal immigrant worker, and/or because Plaintiff filed a tax return that appears to be fraudulent; 2) as to Defendant Francisco Navarrete, because he did not have operational control of the corporate Defendant; 3) as to Plaintiff's minimum wage claim, because he conceded that he does not have such a claim, and because no written demand was provided pursuant to Florida law; 4) Plaintiff cannot prove his damages—how many hours that he worked in any particular week or how much he is owed, nor can he say how much he will ask the jury to award him; 5) the violation, if any, was not willful, and 6) there is no coverage.

**MEMORANDUM OF LAW**

I. **PLAINTIFF IS AN ILLEGAL IMMIGRANT WORKER, AND FAILED TO FILE TAX RETURNS FOR THOSE YEARS HE WORKED WITH DEFENDANTS**

    A. **The Plaintiff's Illegal Immigrant Status Requires Summary Judgment**

A Court allowing illegal immigrant workers to proceed with a Federal Court case (*e.g.*, by coming into the courtroom and testifying at a hearing) presents all sorts of practical and policy-based problems. 18 U.S.C. § 4 (prohibiting "misprision of a felony"); 8 U.S.C. § 1324(a)(1)(A)(iii) (making it a crime to shield unauthorized aliens from detection).

The Plaintiff, quite simply, is a fugitive from justice, and should be dealt with the Court in that manner, as one branch of government is spending tens of billions of dollars per year to arrest and deport people just like the Plaintiff. (Facts ¶ 2). Here, the Plaintiff admitted he entered the country to work illegally, has never been in the country legally, and is in the country illegally now. (Facts ¶ 2). Our own Supreme Court has stated that "indifference to the duty to report known criminal behavior remains a badge of irresponsible citizenship" and reporting criminal activity is a "deeply rooted social obligation." *Roberts v. United States*, 445 U.S. 552, 557-58 (1980). Further, our Supreme Court has stated that "the common law recognized a duty to raise the 'hue and cry' and report felonies to the authorities. . . . It is apparent from this statute [18 U.S.C. § 4 (prohibiting misprision of a felony)], as well as from our history and that of England, that concealment of crime and agreements to do so are not looked upon with favor. Such conduct deserves no encomium." *Branzburg v. Hayes*, 408 U.S. 665, 696-97 (1972) (citations omitted). One branch of our government is spending billions to deal with the illegal-immigrant problem, and the other branch should not inhibit these efforts by allowing them to bring civil claims under federal law for work performed here illegally (which, if they recover in the civil suits, will just allow them to stay in this country illegally longer), work that could have been performed by individuals legally allowed to work here, who can then legally pay taxes on those earnings. The FLSA was enacted in the depths of the great depression (1938) to try to increase the workforce and decrease the unemployment rate by requiring employers to pay employees time and one-half for hours worked over forty in a workweek, the thinking being that instead of paying time and one-half, the employer would hire additional workers. *Bay Ridge Co. v. Aaron*, 334 U.S. 446, 460 (1948) (finding that the FLSA was enacted "to spread employment through inducing employers to shorten hours [for existing workers] because of the pressure of the extra costs [which would require the employer to hire additional workers].").

The FLSA defines an "employee" as "any individual" employed by an employer. 29 U.S.C. § 203(e)(1). Although this definition, which is to be construed broadly because the FLSA is a civil remedial statute, seemingly includes illegal immigrant workers, it would be contrary to this country's enormous effort (in the billions of dollars) to end illegal immigration and the employment of illegal aliens for this Court to so hold. It would also require the Court to have a plaintiff in its courtroom subject to immediate arrest and deportation by the federal government. As set forth below in more detail, after passage of the Immigration Reform and Control Act of 1986 (Pub. L. No. 99-603, 100 Stat. 3359, codified in scattered sections of 8 U.S.C., herein after referred to as "IRCA") and the Supreme Court's decision in *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) (holding that illegal aliens are not entitled to relief under the National Labor Relations Act ("NLRA"), which defines the term "employee" even broader than the FLSA), it is clear that illegal workers are not entitled to relief under the FLSA.

The NLRA defines "employee" as "any employee, and shall not be limited to the employees of a particular employer . . . and shall include any individual . . . ." 29 U.S.C. § 152(3). This definition is more expansive than the FLSA's definition of "employee", and because the Supreme Court found in *Hoffman* that illegal immigrant workers are not "employees" entitled to relief under the National Labor Relations Act (on account of their being either in the country illegally or having worked without the proper legal documentation), this Court must find that the Plaintiff in this case is not an "employee" under the FLSA and thus is not entitled to relief under the Act.

The Supreme Court has held that the term "employee" in federal statutes must be interpreted in conjunction with the immigration laws. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 892-93 (1984) (holding in a case decided two years before IRCA was enacted that because Congress had not enacted a comprehensive statute prohibiting illegal aliens from working, it had to define "employee" in the NLRA as including undocumented workers). Applying the *Sure-Tan* analysis, this Court should hold that an illegal immigrant worker is not an "employee" under the FLSA for the simple reason that ever since 1986 an illegal immigrant worker is not a lawful "employee" in the United States. *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) (holding so under the NLRA). In *Sure-Tan*, the Court explained that the NLRA's definition of "employee" must be interpreted in conjunction with the immigration laws. *Sure-Tan, Inc.*, 467 U.S. at 892-93. The Court then held that illegal immigrant workers were "employees" covered by the NLRA because "[c]ounterintuitive though it may be" the immigration laws *as they stood in 1984* did not prohibit employment of illegal immigrant workers. *Id.* at 892. The Court stated:

3

> For whatever reason, Congress has not adopted provisions in the INA making it unlawful for an employer to hire an alien who is present or working in the United States without appropriate authorization. . . . Moreover, Congress has not made it a separate criminal offense for an alien to accept employment after entering this country illegally. *Since the employment relationship between an employer and an undocumented alien is hence not illegal under the INA, there is no reason to conclude that application of the NLRA to employment practices affecting such aliens would necessarily conflict with the terms of the INA.*

*Id.* at 892-93 (emphasis added).

As Defendants read the decision, the Court in *Sure-Tan* applied a straightforward analytical framework to govern the question whether illegal immigrant workers are "employees" under the NLRA. If federal law does not prohibit employment of illegal immigrant workers, then the workers can be "employees" under the NLRA. If, on the other hand, federal law prohibits employment of illegal immigrant workers, then those workers are not "employees" under the NLRA.[1]

Two years after *Sure-Tan*, as the Court had foreshadowed, Congress enacted and President Reagan signed a comprehensive immigration bill that prohibited employment of illegal immigrant workers. The landmark Immigration Reform and Control Act of 1986, known as IRCA, "forcefully made combating the employment of illegal aliens central to the policy of immigration law." *Hoffman*, 535 U.S. at 147. Under IRCA, it is now a criminal and civil violation for an employer to knowingly hire an illegal immigrant. 8 U.S.C. § 1324a. If an employer hires a worker and later discovers that the worker is in the United States illegally, the employer must fire the worker immediately. *Id.* § 1324a(a)(2). And federal law provides that an employee may not use fraudulent identification documents in completing the immigration forms that are required to be employed in the United States. *Id.* § 1324c(a). IRCA "significantly" changed the "legal landscape" that had existed in *Sure-Tan*. *Hoffman*, 535 U.S. at 147. Applying the straightforward *Sure-Tan* analysis in the wake of IRCA, the Court should hold that an illegal immigrant worker is not an "employee" under the FLSA because Congress has now made it illegal for illegal immigrants to be employed.

This Court should know, and undersigned counsel is obliged to provide the information to the Court, Rules Regulating the Florida Bar 4-4.3, that the Eleventh Circuit has previously held that

---

[1] In *Sure-Tan*, Justices Powell and Rehnquist dissented, arguing that even without a specific congressional prohibition against employing illegal immigrant workers, it is "unlikely that Congress intended the term 'employee' to include—for purposes of being accorded the benefits of that protective statute [the NLRA]—persons wanted by the United States for the violation of our criminal laws. *Sure-Tan, Inc.*, 467 U.S. at 913 (Powell, J., dissenting). The *Sure-Tan* majority reasoned, however, that a congressional prohibition on employment of illegal immigrants was necessary in order to conclude that illegal immigrant workers were not

illegal immigrant workers can recover under the FLSA. *Patel v. Quality Inn,* 803 F.2d 632, 647 (11th Cir. 1986). Notwithstanding the *Patel* decision, the Court does not have to follow it, because the subsequent *Hoffman* decision requires the conclusion that the *Patel* decision was overruled *sub silencio*. The basis for the *Patel* decision is that the passage of IRCA does not require the conclusion that illegal immigrant workers cannot recover under the FLSA. *Id*. The *Hoffman* case directly undermines that holding, because it directly holds that the enactment of IRCA changes the analysis with respect to recovery under civil remedial statutes for illegal immigrant workers, as it explained that providing illegal immigrant workers with remedies under the NLRA "would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA." *Hoffman*, 535 U.S. at 151.[2] The Court noted that allowing illegal immigrant workers to recover under our civil statutes "not only trivializes the immigration laws, it also condones and encourages future violations", *id.* at 150, and "would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations." *Id.* at 151. The *Patel* decision reasoned differently, and that reasoning has been rejected. Moreover, the *Patel* was decision was enacted more than twenty (20) years ago, where the problems with illegal immigration and the employment of illegal immigrant workers had not reached the exponential proportions that they are at now in 2010, when this country is spending unprecedented sums of money to combat their entry, their residing here, and their being employed here. Finally, the *Patel* decision does not mention the *Sure-Tan* analysis, which holds that the dispositive question concerning whether an illegal immigrant worker seeking to define himself or herself as an "employee" in a civil remedial statute, is whether the worker is illegal or not. These facts convince undersigned counsel that the Court can grant summary judgment for Defendants, and

---

"employees" under the NLRA. As a result of the passage of IRCA in 1986, of course, such a prohibition now exists.

[2] The *Hoffman* holding was extremely direct:

> The National Labor Relations Board (Board) awarded backpay to an undocumented alien who has never been legally authorized to work in the United States. We hold that such relief is foreclosed by federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 (IRCA).

*Hoffman*, 535 U.S. at 140. This holding clearly overrules *Patel sub silencio*. The *Hoffman* Court went even further by noting that any sort of serious illegal activity related to their employment on the part of an employee trying to seek relief under civil remedial statutes prevents such "employees" from recovering. *Id.* at 143 (stating that "we have consistently set aside awards of reinstatement or backpay to employees found guilty of serious illegal conduct in connection with their employment").

5

not run afoul of *Patel*.³  Plaintiff was an illegal immigrant worker (he came illegally and worked illegally—without the appropriate written authorization from the United States government—and he is currently in the country illegally. (Facts ¶ 2).

It is a disgrace to the Court to allow a plaintiff that comes before the Court illegally to prosecute a cause of action, much less be awarded anything by the Court system. The courts have authored opinions that apply to the facts of this case, which disallowed a plaintiff from so prosecuting an action, *Neiman v. Provident Life & Accident Ins. Co.*, 217 F. Supp. 2d 1281 (S.D. Fla. 2002) (Moreno, J.) (disallowing a party who was illegally practicing law from suing under an insurance contract to recover disability benefits), including the Eleventh Circuit. *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006) (disallowing a party engaged in illegal conduct to prosecute a RICO cause of action; holding the defense of *in pari delicto* applies to actions at law).

In *Neiman*, the court framed the issue as being "whether Neiman can enforce the policy to recover disability benefits despite his illegal occupation." *Neiman*, 217 F. Supp. 2d at 1286. The court held that Neiman "is precluded from doing so." *Id.* The court observed that to allow Neiman, who had been practicing law without a license, "to proceed to trial to obtain benefits that would indemnify the loss of his illegal income would . . . legitimize his conduct". *Id.* at 1283. The court noted that Judge Middlebrooks referred Neiman to the United States Attorneys' Office for criminal investigation (which the court should do here for both immigration and tax violations). *Id.* at 1284. The court reasoned that parties to an agreement are generally free to contract out of or around federal or state law, but they may not enter a contract that is void as a matter of public policy. *Id.* at 1286. While in this case there was no actual contract of employment, at-will employment is contractual in nature, as they are an agreement to work for certain remuneration. Such agreements that are contrary to public policy are void because they have no legal sanction and establish no legal bond between the

---

³ This argument is conceptually similar to an unclean hands defense which applies "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). The Supreme Court has applied the unclean hands defense to an action for damages under the securities laws, noting that the plaintiff bore equal responsibility for the violations he sought to redress and preclusion of the suit did not significantly interfere with the effective enforcement of securities law. *B. Eichler, H, Richards, Inc. v. Berner*, 472 U.S. 299 (1985). In this case, Plaintiff bears greater responsibility than the Defendants, because he was an illegal immigrant worker. Moreover, preclusion of the suit will not hamper effective enforcement of the FLSA because they are no longer employed by the Defendants, and is not authorized to work in this country. Other courts have held that illegal immigrant workers have no standing to sue in any capacity. *Coules v. Pharris*, 250 N.W. 404 (Wis. 1933) (holding that an illegal alien had no standing to sue, in that case for breach of contract).

parties. *Id.* To be void as a matter of public policy the agreement must have a bad tendency or contravene the established interests of society, and to determine that courts look "primarily to statutes". *Id.*

When an illegal immigrant applies for work with an employer, because that is illegal conduct, clearly such an at-will employment agreement contravenes the established interests of society. *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) (holding that the landmark Immigration Reform and Control Act of 1986, known as IRCA, "forcefully made combating the employment of illegal aliens central to the policy of immigration law."); 8 U.S.C. § 1324c(a) (illegal to work in the United States without the proper documentation from the government). The *Neiman* Court reasoned that the rationale of the rule is that the judiciary as an institution will not provide aid to enforce an obligation that arises from an illegal agreement. *Neiman*, 217 F. Supp. 2d at 1286. The Eleventh Circuit issued a ruling similar to *Neiman* conceptually, in that case holding that the doctrine of *in pari delicto* applies to bar the bringing of a RICO cause of action, and noting that the defense applies to legal causes of action, such as RICO claims. *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006). Other courts have so held. *Nisselson v. Lymont*, 469 F.3d 143 (1st Cir. 2006) (allowing *in pari delicto* defense to bar the bringing of a securities fraud cause of action); *In re Today's Destiny, Inc.*, 388 B.R. 737 (S.D. Tex. 2008) (noting that the defense is not limited to contract causes of action, but applies to all causes of action); *Decatur Ventures, L.L.C. v. Stapleton Ventures, L.L.C.*, 2006 WL 1367436 (S.D. Ind.) (noting that the Seventh Circuit has held that Federal Rule of Civil Procedure 2, which blends law and equity claims and defenses, allows for the *in pari delicto* defense (or unclean hands defense) to apply to legal causes of action and remedies).[4]

As Defendants noted above, a Court allowing illegal immigrant workers to proceed with a Federal Court case (*e.g.*, by coming into the courtroom and testifying at a hearing) presents all sorts of practical and policy-based problems. 18 U.S.C. § 4 (prohibiting "misprision of a felony"); 8 U.S.C. § 1324(a)(1)(A)(iii) (making it a crime to shield unauthorized aliens from detection). In short, to do so arguably makes everyone in the courtroom (if the appropriate action is not taken) complicit with assisting a known illegal immigrant, because two lawyers, the Judge, and the

---

[4] These courts note that the *in pari delicto* defense typically applies to parties that are both involved in illegal activity, that the court will leave such parties as it finds them. Here, however, there are no allegations that the Defendants were involved in immigration fraud or other illegal conduct. Thus, the Defendants assert that this is not a case in which both parties come before the Court with dirty hands, but only the Plaintiff has unclean hands.

7

Marshal's Service will all know that the Plaintiff is a fugitive from justice (both for immigration and tax purposes), but the Plaintiff apparently believes that no one should (or will) do anything about any of this. At a minimum, the Plaintiff should be referred to the United States Attorney, as set forth above. That the Plaintiff would continue this litigation, baiting a Judge of this Circuit to preside over this litigation, rather than dismissing this case is completely lost on defense counsel. Coupled with the problem of his illegal status, the Plaintiff in this case has not paid income taxes on any of the money earned from his employment with the Defendants (Facts ¶ 3), and he presumably will not pay any if he receives a judgment or other award from this litigation. The Defendants submit that this Court should conclude that an illegal immigrant, who has defrauded the federal government out of tax dollars related to his employment, should not be able to recover, because the Court should not entertain any claims he may have. (Facts ¶¶ 2-3). That under these facts an illegal immigrant is going to bring and maintain such a lawsuit besmirches our court system and is a disgrace.

    **B.**   **Fraudulent Federal Income Tax Returns Requires Summary Judgment**

    The *Hoffman* Court went even further by noting that any sort of serious illegal activity related to their employment on the part of an employee trying to seek relief under civil remedial statutes prevents such "employees" from recovering under the employment statute against the employer. *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 143 (2002) (stating that "we have consistently set aside awards of reinstatement or backpay to employees found guilty of serious illegal conduct in connection with their employment"). Other courts agree, basing their holdings on the doctrine of *in pari delicto*. *Neiman v. Provident Life & Accident Ins. Co.*, 217 F. Supp. 2d 1281 (S.D. Fla. 2002) (Moreno, J.) (disallowing a party who was illegally practicing law from suing under an insurance contract to recover disability benefits), including the Eleventh Circuit. *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006) (disallowing a party engaged in illegal conduct to prosecute a RICO cause of action; holding the defense of *in pari delicto* applies to actions at law). This rubric should be applied to the fact that Plaintiff did not file any federal income tax return for any of the years that he worked for the Defendants. (Facts ¶ 3). Frankly, this is a disgrace, coming from someone who is not here legally, and more is expected of such individuals. Regardless of the issue of immigration status, the Defendants move for summary judgment on the ground that the doctrine of *in pari delicto* prohibits the Plaintiff from recovery, because of the Plaintiff's failure to pay income taxes on any of his earnings (while with Defendants) with the federal government, regardless of his immigration status.

8

### III. THE PLAINTIFF CANNOT ESTABLISH INDIVIDUAL LIABILITY AGAINST FRANCISCO NAVARRETE

Under the FLSA, an individual corporate officer can be considered an employer. Title 29 U.S.C. § 203(d) defines an "employer" as "any person acting directly or indirectly in the interest of the employer in relation to an employee." 29 U.S.C. § 203(d). The Eleventh Circuit has routinely interpreted this phrase to mean that an individual employer must be a corporate officer with operational control (involved in the day-to-day operations of the business) or involved in the setting of wages in order to be an employer under the Act. *Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160-61 (11th Cir. 2008); *Patel v. Wargo,* 803 F.2d 632, 637 (11th Cir. 1986) (citing *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983)). *See also Casseus v. First Eagle, L.L.C.*, 2008 WL 1782363 (S.D. Fla., Apr. 18, 2008).

Francisco Navarrete did not have operational control over the day-to-day business operations, as Jose Navarrete had that, and he did not have involvement in pay issues. (Facts ¶ 13). Accordingly, it is clear that summary judgment be granted in favor of Defendant Francisco Navarrete.

### IV. THE FLORIDA MINIMUM WAGE LAW IS INAPPLICABLE BECAUSE THE PLAINTIFF FAILED TO PROVIDE WRITTEN NOTICE TO THE DEFENDANTS THAT THEY WERE NOT BEING PAID MINIMUM WAGE, AND BECAUSE THE PLAINTIFF HAS ABANDONED ANY SUCH CLAIM

Florida's minimum wage is guaranteed by the Florida Constitution. Fla. Const. art. X, § 24. This provision was approved by the electorate during the November 2, 2004, general election. The Florida Minimum Wage Act, *Florida Statutes* § 448.110, "provide[s] measures appropriate for the implementation of the [constitutional minimum wage guarantee], in accordance with the authority granted to the Legislature" by Article X, § 24, of the state constitution. *Florida Statutes* § 448.110(2) (2007). The statute requires that the employee first provide written notice to the employer, in order to provide the employer with a fifteen-day grace period with which to determine if minimum wage was not paid, and to pay it if it is owed, as Florida Statutes § 448.110(6) states in pertinent part, as follows:

> prior to bringing any claim for unpaid minimum wages pursuant to this section, the person aggrieved shall notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action. The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice.

9

*Florida Statutes* § 448.110(6).  Upon receipt of this notice, an employer has fifteen (15) days to resolve the claim before an action may be filed to recover unpaid wages.  *Id.* § 448.110(b).  The courts have held that the Florida minimum wage statute requires that a plaintiff traveling under it inform the defendant in writing that they have not been paid the minimum wage and they must give the employer 15 days to pay the minimum wage before bringing suit, and if such written notice is not given, the minimum wage action must be dismissed.  *Resnick v. Oppenheimer & Co.*, 2008 WL 113665 (S.D. Fla. 2008).  In this case, the Plaintiff testified that he did not provide written notice of any unpaid minimum wage claim to the Defendants.  (Facts ¶ 14).  Thus, summary judgment on any minimum wage claim under state law should be granted.  *Resnick v. Oppenheimer & Co.*, 2008 WL 113665 (S.D. Fla. 2008).

Further, the Plaintiff testified squarely that he does not have a minimum wage claim, but only an overtime claim (Facts ¶ 14), and thus summary judgment should be granted in favor of the Defendants as to these claims.  *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005) (holding that claims can be abandoned).  Additionally, Plaintiff abandoned any potential minimum wage claims.

## V. THE PLAINTIFF CANNOT PROVE HIS DAMAGES, AND THUS SUMMARY JUDGMENT SHOULD BE GRANTED

### A. Failure to Prove Damages

As an initial matter, while Plaintiff testified in his deposition that he believes that there may have been certain hours that he was not paid for (apparently invoking a claim of working off of the clock or without proper pay) (Facts ¶ 1), the only claim that is included in either the Complaint [D.E. 1] is a claim for overtime, which Plaintiff also said was all that he was suing for in his deposition. (Facts ¶ 14).  Because the Plaintiff did not plead an off-the-clock hours claim, or that he was not paid for certain work performed, but rather only pled an overtime claim, the Plaintiff is foreclosed from bringing such a claim now.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004) (holding that allow *Swierkiewicz* mandates a liberal pleading standard, "[t]his standard does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage" and noting that "[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment").

An employee who sues for overtime compensation under the FLSA bears the burden of proof by a preponderance of the evidence that his employer failed to properly compensate him for his completed work.  *Myers v. The Copper Cellar Corporation*, 192 F.3d 546, 551 (6th Cir. 1999).  It is

10

settled that a plaintiff must actually prove the hours that he worked and the overtime to which he is owed, week by week. *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F. Supp. 2d 529, 534-36 (N.D. Ill. 2006) (stating that when the only evidence is plaintiff's "declaration asserting without specificity that she worked more than 40 hours per week . . . [t]hat . . . is not sufficient to create a genuine issue of fact"); *Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997) (stating that "conclusory allegations and selfserving [sic] affidavits [regarding hours worked], if not supported by the record, will not preclude summary judgment"); *Malbranche v. Art Hall Protection Servs., Inc.*, Case No. 03-22726-CIV-KING at 5-7 (Dec. 20, 2006) (granting summary judgment for the defendant and noting that the plaintiffs were guessing as to the hours that they worked, and thus would be guessing as to what they would be owed at trial), *aff'd*, 2007 WL 4275513 (Dec. 7, 2007); *Dol v. Cielo in the Grove*, 2008 WL 2773552 (S.D. Fla. 2008) (holding that a plaintiff must allege "actual hours worked" to state a claim under the FLSA).

The plaintiff can typically establish the extent of the overtime for which he was not paid through the discovery and analysis of the defendant-employer's code-mandated records. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).[5] However, if the Defendant failed to keep accurate or adequate records, the Plaintiff's burden of proof is "relaxed." *Myers*, 192 F.3d at 551 (citing *Anderson*, 328 U.S. at 687-88). In such a situation, a Plaintiff can fulfill this *relaxed* burden of proof "if he proves that he has in fact performed work for which he was improperly compensated *and* if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. Upon plaintiff's satisfaction of this relaxed burden, the burden is then shifted to the defendant to provide evidence which negates the reasonableness of the inference drawn from Plaintiff's evidence. *Id.* at 687-88. Conversely, if the defendant maintained accurate records from which the plaintiff can "conclusively reconstruct the definite days and hours" during which plaintiff worked, the aforementioned "relaxed" burden of proof is unavailable to the plaintiff, and the plaintiff must prove his damages with specificity. *Myers*, 192 F.3d at 551-52.[6] Under either standard, a plaintiff's failure to produce sufficient and admissible

---

[5] With regard to the responsibility to maintain employment records, the FLSA provides in relevant part: "Every employer subject to any provision of this chapter . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him and shall preserve such records for such periods of time . . . as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations . . . thereunder." 29 U.S.C. § 211(c).

[6] *Anderson does not* lessen a plaintiff's standard of proof to show that a FLSA violation occurred. *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 602-03 (6th Cir. 2009). Instead, it merely relaxes the standard of proof if the defendant failed to maintain adequate records, allowing the plaintiff to prove damages by way of estimate if liability has already been established. *Id.*; *Myers*, 192 F.3d at 551.

evidence *with specificity* entitles the defendant to summary judgment.  *See e.g.*, *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F. Supp. 2d 529, 534-536 (N.D. Ill. 2006).  The two standards—when there are time records and when there are not—will be discussed in turn.

In this case, the Defendants kept time records of the hours that the Plaintiff worked, and thus the relaxed *Anderson* standard is not applicable, and Plaintiff has to prove his damages and he was not paid overtime by a straight preponderance of the evidence.  Regardless, even if the Plaintiff was not, the Plaintiff cannot prove the amount of hours that he worked, because he testified that he had no idea how many hours he worked on any given day or week, cannot read his paystubs, and testified that he cannot even hazard a guess as to the amount of hours that he worked or is owed.  (Facts ¶ 4).  The Plaintiff's failure to prove that there is any overtime owed (because the Defendants either did not pay it or because the Plaintiff did not work it) requires summary judgment in favor of the Defendants.  It is particularly galling that Plaintiff submitted two different statements of claim, both of which are horribly flawed.  (Facts ¶¶ 9-12).  Further, Plaintiff has vacillated between each statement of claim, submitting the first one, then submitting an amended one along with an interrogatory stating that the amended one was accurate, but testifying in his deposition that his original one (which sought more money), is really accurate.  (Facts ¶¶ 9, 12).

The inception of the *Anderson* standard in 1946 did not overrule all instructive cases that came before it.  To this day, some of the case law regarding the proof of damages for FLSA overtime claims remains good law and continues to provide valuable insight into this particular ambit of the law.  For example, in the case of *Feldman v. Roschelle Bros. Inc.*, 49 F. Supp. 247, 248 (D. N.Y. 1942), the sole issue was one of fact under the FLSA concerning whether two plaintiffs worked overtime in the defendant's store.  Neither plaintiff had time records.  They testified entirely from their respective recollections, and admitted on cross-examination that they could not provide the exact hours that they worked on any one given day or in any one given week, and were ultimately unable to prove with any specificity whether they had in fact worked overtime for which they were not paid.  *Id.*  In dismissing the complaint, the court explained, "The evidence as to the claimed overtime for any of the periods is vague, uncertain, and does not carry the quality of proof to induce conviction.  I cannot make a guess as to when the Plaintiffs worked overtime or for how long. . . .  The Plaintiffs have failed to meet the burden of proof required of them."  *Id*. at 250.

Furthermore, in a similar action under the FLSA to recover overtime compensation, *Jax Beer Co. v. Redfern*, 124 F.2d 172 (5th Cir. 1941), the evidence that the Plaintiffs provided regarding their hours and wages was void of any records whatsoever and consisted of "a mass of contradictions . . .

12

lacking in credence." *Jax Beer Co.*, 124 F.2d at 175.  Neither plaintiff could testify as to the specific number of hours that they worked each day.  *Id.*[7]  In overruling the district court's ruling for the plaintiffs, the court described the lack of sufficient evidence by declaring,

> The evidence as to the material facts in the case is so uncertain and conjectural that we find nothing substantial upon which to predicate a verdict.  To uphold the findings and judgment of the lower court we must base decision upon the guess, speculation, and averages made up from the uncertain recollections of these appellees.  This we refuse to do.

*Id.*  Since the factual backgrounds of *Feldman* and *Jax Beer Co.* are directly analogous to the specifics in this case, the end result should undoubtedly be the same.

Additionally, in the case of *Collins v. Burton-Dixie Corporation*, 53 F. Supp. 821 (W.D. S.C. 1944) concerning FLSA claims for unpaid minimum wages and overtime compensation, the Defendant kept complete pay roll records of all of its employees and the Plaintiff once again admitted that he kept no records whatsoever regarding the hours that he claimed he worked and was not paid.  *Collins*, 53 F. Supp. at 822.  Here, the court held,

> There is no doubt that plaintiff has the burden of proof. . . .  It is not enough for a plaintiff to come into court under this act and assert that he is entitled to minimum wages and time and a half for overtime served . . . he must produce evidence that is convincing and prove his cause by [a preponderance of the evidence].  Evidence which the plaintiff must submit must be something more than a mere scintilla, and it must not consist of vague, uncertain, irrelevant matter, but must be definite and certain and something of relevant consequence and substantial nature.

*Id.* at 823.  The court's description of the plaintiff's burden of proof remains unchanged by the subsequently decided *Anderson* case.[8]  In fact the plaintiff's burden in FLSA overtime compensation actions as articulated in the *Collins* case is the same exact one advocated by *Anderson* with respect to a defendant who is able to produce adequate and accurate records.  *See also Wilkinson v. Noland Co.*, 40 F. Supp. 1009, 1013 (E.D. Va. 1941); and *Lowrimore v. Union Bag & Paper Corp.*, 30 F. Supp. 647, 653 (S.D. Ga. 1939).[9]  Thus, summary judgment should be granted in favor of the Defendants,

---

[7] One of the two plaintiffs could not even testify as to the number of days that he missed work, nor could he provide any accurate information regarding the amount of his salary.  *Jax Beer Co.*, 124 F.2d at 175.

[8] *Anderson* only alters the plaintiff's burden of proof with regard to cases in which the defendants do not keep adequate and accurate records, whereas the defendant in *Collins* maintained adequate and accurate records.

[9] Regarding the lack of specificity of plaintiff's proof in the *Lowrimore* case, the court stated:

> [The] proof as to the number of hours worked is not sufficient to reasonably establish such hours.  Such proof was at least only a guess.  It is for Congress—not the Administrator or the court—to establish rights and punishments by guess work, especially when the Act provides for computation based upon definite amounts of time and wages.  If Congress desired

because the Plaintiff cannot even guess as to what his hours were (and cannot understand the Defendants' time and pay records at all, which demonstrate that he was paid for his overtime).

Because the Plaintiff may argue that the Defendants did not keep proper records under the FLSA, which is not so, Defendants will analyze why they are entitled to summary judgment even if the *Anderson* case's standard is applicable. Initially, it is important to note that *Anderson does not* lessen the standard of proof for showing that a FLSA violation occurred. *O'Brien v. Ed Donnelly Enterprises, Inc.,* 575 F.3d 567, 602-03 (6th Cir. 2009). Instead, it merely relaxes the standard of proof if the defendant failed to maintain adequate records, allowing the Plaintiff to prove damages by way of estimate if liability has already been established. *Id.*; *Myers*, 192 F.3d at 551.

In cases where records are not kept, plaintiff's failure to produce sufficient and admissible evidence *with specificity* entitles the defendant to summary judgment. *See e.g.*, *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F. Supp. 2d 529, 534-36 (N.D. Ill. 2006) (stating that when the only evidence is Plaintiff's "declaration asserting without specificity that she worked more than 40 hours per week . . . [t]hat . . . is not sufficient to create a genuine issue of fact"); *Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997) (stating that "conclusory allegations and selfserving [sic] affidavits, if not supported by the record, will not preclude summary judgment").

Arguably the most significant and informative post-*Anderson* case on point is the recent case of *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F. Supp. 2d 529 (N.D. Ill. 2006). In *Gatto*, a former loan officer employee sued her former employer and former employer's president, claiming that they violated the FLSA for failing to compensate her for her alleged overtime hours worked. *Id.* at 531. Citing *Anderson,* the court applied *Anderson's* "reasonable and justifiable inferences" standard in determining whether a genuine issue of material fact existed.[10] *Id.* at 533. After failing to include any evidence of having worked overtime in her opposition to defendant's motion for summary judgment, plaintiff subsequently supplemented the record with a "declaration asserting without specificity that she had worked more than 40 hours per week 'nearly every week'" in the period between August 2002 and July 2003, along with handwritten documents which contained the hours that she allegedly worked. *Id.* at 535-36. The court ultimately held that the latter were

---

different rules of evidence or different methods of computation it can provide them, as it has done in the case of damages by infringement of patents.

*Lowrimore*, 30 F. Supp. at 653.

[10] In reference to the plaintiff's burden, the court unequivocally stated, "Gatto must produce admissible evidence demonstrating, as a matter of just and reasonable inference, that she has performed work for which she would be entitled to overtime compensation." *Id.* at 534 (citing *Anderson*, 328 U.S. at 686-688).

inadmissible under the business records exception to the hearsay rule,[11] while the former did not "provide adequate assurance of the trustworthiness of the handwritten documents" and was not, by itself, enough to create a genuine issue of fact. *Id.* at 535-36; *see also*, *Anderson*, 328 U.S. at 687 (declaring that an employee's own records "may be and frequently are untrustworthy"). Therefore, because Gatto was unable to provide sufficient evidence demonstrating a genuine issue of fact, she consequently failed her burden of proof, and the court appropriately granted the defendant's motion for summary judgment. *Gatto*, 442 F. Supp. 2d at 536.

Another noteworthy case concerning the Plaintiff's burden of proof is *Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999). In the *Myers* case, a group of restaurant employees sued the restaurant operator for alleged FLSA violations requesting damages for under-compensation. *Myers*, 192 F.3d at 548. The court held that because the defendant maintained and possessed adequate and accurate records, the plaintiffs' option to prove damages inferentially was negated. *Id.* at 551-52. Ultimately, the plaintiffs' failure to carry their burden of proving damages with any specificity as to the "definite days and hours during which each plaintiff worked," coupled with "imprecise testimony from several plaintiffs" led to the defendant receiving a ruling in its favor. *Id*.

In this case, the Plaintiff has not set forth the basis to prove the amount of work he performed by just and reasonable inference, as he has admitted in his deposition that he cannot even guess as to the hours that he worked, and thus there is no submission of evidence that will prove by just and reasonable inference the number of hours that he worked in a week, whether for any overtime hours or for any hours worked for which he claims he was not paid. (Facts ¶ ). Thus, the burden never shifts to the Defendants to negative the inference created by any such testimony, and thus summary judgment is warranted.

### B.  Failure to Testify as to Damages and Settlement

The Plaintiff in this case was unable to articulate what his claim is or what he is owed. (Facts ¶¶ 9, 12). This requires summary judgment in favor of Defendants. The Court has the discretion to dismiss a plaintiff's claim on summary judgment if the plaintiff fails to offer evidence in support of an element of his claim, and the claim is one for which the plaintiff bears the burden of proof at trial. *Weinberg v. Whatcom County*, 241 F.3d 746, 751 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)). In *Weinberg*, the court dismissed plaintiff's claims on summary judgment for his failure to offer competent evidence on damages, stating that "[s]ummary judgment is

---

[11] The court found that the handwritten records did not fall under the business records exception because they did not meet the requirement of being kept in the course of defendant's regularly conducted business activity.

appropriate where appellants have no . . . witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages. *Weinberg*, 241 F.3d at 751 (citing *Rickards v. Canine Eye Registration Found, Inc.*, 704 F.2d 1449, 1452 (9th Cir. 1983)).[12] The court went on to state that plaintiffs "must provide evidence such that the jury is not left to speculation or guesswork in determining the amount of damages to award." *Id.* (citing *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988)); *see also Ron Tonkin Gran Turismo, Inc. v. Fiat Distributors, Inc*, 637 F.2d 1376, 1381 (9th Cir. 1981); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988); *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1509 (9th Cir. 1985)).[13]

Furthermore, even if the opposing parties present conflicting views on the amount of damages and the moving party faces an initial presumption against the granting of summary judgment, this burden may still be overcome with respect to the admissibility or relevancy of certain damages calculations if the calculations are "so unreliable or flawed that they could not properly form the basis of a reasonable jury verdict." *Program Engineering, Inc. v. California Jockey Club*, 1984 WL 2931, *3 (N.D. Cal. 1984) (citing *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 691 F.2d 1335 (9th Cir. 1982)).[14] It is also important to note that simply because a plaintiff attends depositions and appears through his actions to be acting in good faith, dismissal may still be warranted if that Plaintiff consistently refuses to supply relevant and unprivileged

---

*Id.* at 535

[12] "'The showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law.'" *Bushie v. Stenocord Corporation*, 460 F.2d 116, 119 (9th Cir. 1972). In the present case, the facts of the case simply do not support the Plaintiff's legal theory. When coupling that with either the inability or unwillingness of the Plaintiff to offer evidence with any specificity as to the damages that he is owed, it becomes very difficult to ascertain how there is any "genuine issue for trial" with regard to damages.

[13] The Plaintiff directly contradicts this legal doctrine by adamantly refusing during his deposition to assert a specific amount of damages that he is owed since he feels that it is the role of the jury to somehow determine this without any input from him. Further complicating the case concerning Plaintiff's damages is that the Plaintiff has now submitted two Statements of Claim which seek differing amounts of overtime [D.E. 5, 8, and 15], and Plaintiff could not make up his mind in his deposition which one he wanted to follow, testifying that the amended statement was the correct one, and upon learning that the original statement calculated more money for him, stated that the original one was correct. (Facts ¶¶ 9, 12). It is clear upon perusal of the Plaintiff's deposition as a whole, that he has no idea which one is correct.

[14] In the *Program Engineering, Inc.* case, the court ruled that the plaintiff's claims for loss of all business value and lost profits were too "speculative" to sustain the defendant's motion for summary judgment, agreeing with the defendant that plaintiff's approach to quantifying damages "required that Plaintiff stretch both accounting and legal theory beyond its logical elasticity." *Program Engineering Inc.*, 1984 WL 1931 at *3-4. If a plaintiff who makes an attempt to claim something so imprecise as lost business value and lost profits can have its claims dismissed on summary judgment, then surely a plaintiff who refuses entirely to

information. *Regional Refuse Systems, Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 156 (6th Cir. 1988). As the Sixth Circuit stated, "misconduct is not any less misconduct because it is executed with a veneer of good intentions." *Id.*[15]

Plaintiff in the present case finds himself in a situation that is directly analogous to a corporation under Rule 30(b)(6). Under Rule 30(b)(6), when a witness is designated by a corporate party to speak on its behalf, producing an unprepared witness to a deposition is tantamount to failing to attend. *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 304 (3rd Cir. 2000). In this situation, a district court is not required to issue an order compelling discovery before imposing sanctions. *Id.* at 301-02.[16] Here in the present case, however, the situation is even more exaggerated and thus the spirit of the rule is exponentially more frustrated since the unprepared party is not merely an agent of a corporation who needed to be adequately prepared, but instead the perpetrator is the originator of the lawsuit.

## VI. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO WILLFULNESS AND LIQUIDATED DAMAGES

The FLSA provides for a two-year statute of limitations, unless the violation was willful, and if it was willful, a three-year statute of limitations is applicable. 29 U.S.C. § 255(a). Also, the FLSA provides for a doubling of damages, referred to as liquidated damages, if it is not shown that the defendant-employer acted in good faith and reasonably. *Id.* § 260. If the Court does not grant summary judgment on the merits, it should grant summary judgment for the willfulness issue and the liquidated damages issue, because Plaintiff testified that the violation was not willful and that the Defendants acted in good faith and reasonably (Facts ¶ 15). *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005) (holding that claims can be abandoned).

## VII. THE PLAINTIFF CANNOT DEMONSTRATE THAT THE CORPORATE DEFENDANT IS AN ENTERPRISE ENGAGED IN COMMERCE OR THAT INDIVIDUAL COVERAGE IS APPLICABLE

---

allege a specific amount of a much more quantifiable type of damages, such as unpaid overtime wages already worked, should not possibly be able to survive the summary judgment phase either.

[15] This legal precedent directly correlates to the Plaintiff in the present case who consistently refuses to provide an amount of damages to which he feels he is entitled during his deposition. It is also somewhat analogous to the plaintiffs in *Lyons v. Johnson*, 415 F.2d 540, 541-42 (9th Cir. 1969), who brought claims for civil rights damages and repeatedly refused to submit to any depositional interrogation or discovery on the grounds of privilege against self-incrimination, only to have the subsequent dismissal of their claims upheld.

[16] "Among the sanctions available to a District Court under Federal Rule of Civil Procedure 37(b) for failure to comply with discovery is dismissal of the action with prejudice." *Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979). This includes the deliberate refusal to appear for deposition. *Id.*

It is settled that "the party invoking the Court's jurisdiction, bears the burden of demonstrating that this matter falls within the Court's subject matter jurisdiction." *Makro Capital of Am., Inc. v. UBS AG*, 436 F. Supp. 2d 1342, 1345 (S.D. Fla. 2006); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (holding that "the burden is on the plaintiff to prove that jurisdiction exists"). "The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce." *Kitchings v. Florida United Methodist Children's Home, Inc.,* 393 F. Supp. 2d 1282, 1292 n.25 (M.D. Fla. 2005) (citing *D.A. Schulte, Inc., v. Gangi,* 328 U.S. 108, 121 (1946) and *Warren-Bradshaw Drilling Co. v. Hall,* 317 U.S. 88, 90 (1942)).

### A. General Analysis

Simply put, the FLSA requires an employer to pay overtime at a rate of one and one-half the employee's regular rate for all time worked over 40 hours in a week, as long as that employee is engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1). These FLSA overtime provisions apply in two circumstances: (1) where an employee is engaged in commerce or the production of goods for commerce—individual coverage; or (2) where an employee works for an enterprise engaged in commerce or in the production of goods for commerce—enterprise coverage. *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003).

To prove individual coverage under the FLSA, the plaintiff must be "directly participating in the actual movement of persons or things in interstate commerce". *Navarro v. Broney Automotive Repairs, Inc.*, 2008 WL 2315869 (11th Cir., June 6, 2008), *cert. denied*, -- S. Ct. --, 2008 WL 4144447 (2008); *Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1266 (11th Cir. 2006); *Navarro v. Broney Automotive Repairs, Inc.*, 2008 WL 2315869 (11th Cir., June 6, 2008). Further, in addition to the requirement that the individual must be directly participating in the actual movement of persons or things in interstate commerce, "[f]or an employee to be engaged in commerce, 'a substantial part of the employee's work must be related to interstate commerce." *Kitchings*, 393 F. Supp.2d at 1293 n.26 (quoting *Boekemeier v. Fourth Universalist Soc'y in City of New York,* 86 F. Supp.2d 280, 287 (S.D. N.Y. 2000) and (citing *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 572 (1943)). The Plaintiff cannot show this, because he testified that he was not involved in these things. (Facts ¶ 16).

Under the second type of FLSA coverage—"enterprise coverage"—an employee is entitled to time-and-a-half overtime pay if he or she is employed by "an enterprise engaged in commerce," as

defined by § 203(s) of the statute. Section 203(s) of the FLSA provides in relevant part that an "[e]nterprise engaged in commerce or in the production of goods for commerce" means an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or material that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s)(1)(A)(ii). Thus, in order for an enterprise to be "engaged in commerce," for purposes of enterprise coverage, a business must have employees handling goods or materials that have been moved in interstate commerce *and* must have annual gross volume of sales or business done in excess of $500,000. *See* 29 U.S.C. § 203(s)(1)(A)(ii); *Sandoval v. Florida Paradise Lawn Maintenance, Inc.*, 2008 WL 5250274, (11th Cir., Dec. 18, 2008), *aff'g Sandoval v. Florida Paradise Lawn Maintenance, Inc.*, 2008 WL 1777392 * 5-6 (S.D. Fla., Apr. 17, 2008). The Plaintiff must show that the Defendant has two or more employees regularly and recurrently engaged in interstate commerce. *Zarate v. Jamie, Inc.*, 629 F. Supp. 2d 1328 (S.D. Fla. 2009). The Plaintiff cannot do that here. (Facts ¶ 16).

The FLSA overtime provisions apply only to "employers." The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Eleventh Circuit has routinely interpreted this phrase to mean that an individual "employer" must be 1) a corporate officer, 2) who is involved in the day-to-day operations of the business, or otherwise involved with decisions respecting the setting of wages in order to be an "employer" under the Act. *Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160-61 (11th Cir. 2008); *Patel v. Wargo,* 803 F.2d 632, 637 (11th Cir. 1986) (citing *Donovan v. Agnew,* 712 F.2d 1509, 1511 (1st Cir. 1983)).

Moreover, to the extent that the Court finds that the corporate Defendant is subject to suit, the Navarretes' liability is only derivative to that of the corporate Defendant's, *Patel v. Wargo,* 803 F.2d 632, 637 (11th Cir. 1986), and therefore both Navarretes are entitled to summary judgment on that ground. *Milbourn v. Aarmada Protection Sys. 2000, Inc.*, 588 F. Supp. 2d 1341 (S.D. Fla. 2008); *Zarate v. Jamie Underground, Inc.*, 629 F. Supp. 2d 1328 (S.D. Fla. 2009). In this case, summary judgment should be granted in favor of both Navarretes, if summary judgment is granted in

favor of the corporate Defendant, because their individual liability is only derivative of that of the corporate Defendant.

## CONCLUSION

For the foregoing reasons, summary judgment should be granted in favor of the Defendants.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 27, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record (J.H. Zidell, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Glasser, Boreth & Kleppin
Attorneys for Plaintiff
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405
E-mail: Glabor@aol.com

By   s/Chris Kleppin
    Chris Kleppin
    Fla. Bar No. 625485