**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 09-22847-CIV-ALTONAGA/Brown**

**NOLMAN ANTONIO BARRERA SOLANO**,

       Plaintiff,

vs.

**A NAVAS PARTY PRODUCTION, INC.**,
*et al.*,

       Defendants.

_____/

**ORDER**

**THIS CAUSE** came before the Court upon the Motion for Final Summary Judgment ("Motion") [ECF No. 27] of Defendants, A Navas Party Production, Inc.; José E. Navarrete; and Francisco A. Navarrete (collectively "Defendants"), filed on April 27, 2010. The Court has carefully reviewed the parties' written submissions and applicable law.

**I. BACKGROUND**

This case originates from the employment relationship of employee Nolman Antonio Barrera Solano ("Plaintiff") and the employer Defendants. (*See* Compl. [ECF No. 1]). A Navas Party Production, Inc. ("Navas") is co-owned by José E. Navarrete ("J-Navarrete") and Francisco A. Navarrete ("F-Navarrete"), who are brothers. (*See* F-Navarrete Dep. [ECF No. 37-6] 3:18–19). Navas is a party planning company that provides tents, chairs, and tables for events in and outside of Florida. (*See* J-Navarrete Dep. [ECF No. 37-5] 14:5–12; 17:16–19). Navas' annual gross sales have exceeded $500,000 for every year since at least 2005. (*See id.* 12:4–16).

Case No. 09-22847-CIV-ALTONAGA/Brown

The ownership and control of Navas are divided between F-Navarrete and J-Navarrete. F-Navarrete has been President of Navas since its founding and owns 52.5% of the company. (*See* F-Navarrete Dep. 4:6–7; J-Navarrete Dep. 4:19–24). F-Navarrete and J-Navarrete are the individuals with the most financial authority over Navas; F-Navarrete is a signatory on Navas' business accounts, but he rarely signs the employees' checks. (*See id*. 4:14–18, 7:12–13). J-Navarrete participates in the day-to-day operations of Navas, while F-Navarrete largely does not. (*See id*. 5:22–24). However, F-Navarrete has an office at Navas where he spends anywhere between a half an hour to several hours at a time approximately three days a week. (*See id*. 4:21–5:3). Additionally, F-Navarrete admits he had the authority to change Plaintiff's work schedule, raise Plaintiff's hourly wage, and hire or fire Plaintiff and any of Navas' other employees. (*See* Defs.' Answer to Req. for Admis. [ECF No. 37-8] 8–10). However, F-Navarrete never acted on this authority while Plaintiff was employed by Defendants. (*See* F-Navarrete Dep. 5:18–6:8).

From August 2005 to August 2009, Plaintiff was employed by Defendants and would assist in the set-up and removal of equipment at events. (*See* J-Navarrete Dep. 9:10–22). Plaintiff maintains that he traveled in connection with work and that "[he] was sent on at least fifteen trips outside of the state of Florida for the business purposes of A Navas Party Production, to pitch tents and set up party supplies, during the last three years of . . . employment." (Pl.'s Aff. [ECF No. 37-7] ¶ 5).[1] Additionally, Plaintiff asserts three other employees accompanied him on these trips out of the state, and on at least five occasions these employees made out of state trips that Plaintiff did not

---

[1] Defendants contend Plaintiff's assertion that he traveled on at least fifteen business trips out of state is unsubstantiated, however, Plaintiff has substantiated this assertion with his personal knowledge and is not required to do more. *See* FED. R. EVID. 602, 701.

participate in.  (*See id.*).[2]  However, Defendants contend Plaintiff traveled outside Florida on only two occasions and other employees traveled outside of Florida on only one other occasion between August 2005 to August 2009.  (*See* J-Navarrete Dep.17:16–21:8).  Plaintiff, who is in the United States illegally, has not paid any federal income taxes on the wages he earned while employed by Defendants.  (*See* Pl.'s Dep. [ECF No. 28-1] 7:4–8:24).

Plaintiff and Defendants agree that at least two employees were assigned to every party setup. (*See* Resp. [ECF No. 36] 18; J-Navarrete Dep. 15:13–15).  Plaintiff also maintains that the tents used in Defendants' business are made in Germany.  (*See* Pl.'s Aff. ¶ 4).[3]  J-Navarrete contends he does not know where the tents are made, but that most tents have a label saying "made in the USA."  (*See* J-Navarrete Dep.14:16–22).  Defendants also contend, however, that "[n]either Plaintiff nor the company ever purchased goods outside the State of Florida, and could not identify any goods or products that either [Plaintiff] or the company purchased from outside of Florida." (Defs.' Statement of Undisputed Facts [ECF No. 28] ¶ 16).

---

[2]  Defendants contend Plaintiff's statement relies on inadmissible hearsay.  Defendants, however, do not cite any facts or reasoning demonstrating that Plaintiff lacked personal knowledge of these trips.  In fact, in a small business like Navas it is highly likely that Plaintiff has personal knowledge of these trips.

Additionally, Defendants make a general claim that "many of the averments contained in Plaintiff's Affidavit are uncorroborated, and seemingly pulled from thin air."  (Reply [ECF No. 43] 10).  However, because the Defendants do not refer to any specific averment the Court finds Defendants' general attack on Plaintiff's Affidavit meritless.

[3]  Defendants make the same argument as found in footnote one that Plaintiff's statement regarding where the tents are made is unsubstantiated.  In support of their argument, Defendants cite *Grimes v. Texas Department of Mental Health and Mental Retardation*, 102 F.3d 137 (5th Cir. 1996).  However, *Grimes* involved an employment discrimination case and the evidentiary requirement for a plaintiff to plead more than his or her unsubstantiated subjective belief that they were discriminated against and is, therefore, inapplicable in the instant case.

3

Case No. 09-22847-CIV-ALTONAGA/Brown

Plaintiff further maintains J-Navarrete would usually supervise him, but that "[w]hen Defendant Jose Navarette [sic] was not present or available, Francisco Navarette [sic] would give me orders. Francisco Navarette [sic] would give me orders approximately once a week. Additionally, when Jose Navarette [sic] was not present I would ask Francisco Navarette [sic] any questions or clarifications of my job or duties." (Pl.'s Aff. ¶ 6).[4] Contrary to this, F-Navarrete contends he never gave Plaintiff orders or instructions on how to perform his job. (*See* F-Navarrete Dep. 6:12–14).

In his complaint, Plaintiff alleges a claim for violation of the FLSA's overtime provision. To support his overtime claim Plaintiff submitted time cards maintained by the Defendants that show the number of hours Plaintiff worked on certain days and the total hours Plaintiff worked for certain

---

[4] Defendants maintain Plaintiff admitted in his deposition that F-Navarrete never supervised him and Plaintiff's Affidavit is attempting to manufacture a question of fact. Plaintiff appears to make conflicting statements in his deposition:

> Q. Is it true that Francisco did not supervise you?
>
> A. No.

(Pl.'s Dep. 26:12–14).

> Q. But [F-Navarrete] didn't supervise you.
>
> A. No.

(*Id.* 64:15–16). The Eleventh Circuit has ruled "we may *only* disregard an affidavit that 'contradicts, without explanation, previously given *clear* testimony.'" *Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986) (quoting *Van T. Junkins & Assoc. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984) (emphasis in original)); *see also Simmons v. Chi. Bd. of Educ.*, 289 F.3d 488, 492 (11th Cir. 2002) (noting "[a]ll reasonable inferences will be drawn in favor of the party opposing the motion, and that party may attempt to clarify or augment (but not contradict) prior deposition testimony through affidavits"). Plaintiff's Affidavit clarifies the confusion found in Plaintiff's deposition by affirmatively stating F-Navarrete did on occasion supervise Plaintiff. Because the Plaintiff's prior testimony was not "clear" the Court may properly consider the Affidavit at the summary judgment stage; whether Plaintiff's testimony is credible is for the jury to decide.

4

weeks.  (*See* [ECF No. 37-3]).  However, the majority of the time cards are not labeled with a particular day or week, but simply show the hours Plaintiff worked for an unspecified day and the total hours worked for an unspecified week.  (*See id.*).  Supplementing the time cards, Plaintiff also testified that on average he worked 70 hours a week during the time he was employed by Defendants. (*See* Pl.'s Dep. 58:6–22).  The Defendants dispute this average as inaccurate, but do concede there were weeks Plaintiff worked 70 hours.  (*See* J-Navarrete Dep. 22:6–13).  Additionally, Defendants admit they never paid Plaintiff time and a half if he worked over 40 hours in a week.  (*See id.* 26:8–10).  Also, when asked whether he knew if Defendants willfully failed to pay Plaintiff overtime, Plaintiff responded, "[t]o me they did it intentionally."  (Pl.'s Dep. 67:22).  However, moments later, when asked the same question, Plaintiff responded, "No, I don't know."  (*Id.* 68:21).

In his complaint, Plaintiff also alleges that for a period of time he was not paid at all in violation of the FLSA's minimum wage provision.  (*See* Compl. ¶¶ 7–10; Resp. 10).  Plaintiff's deposition contains confusing statements regarding this period.  At one point Plaintiff stated he does not have a minimum wage claim (*see* Pl.'s Dep. 53:12–13, 67:14–15, 113:12–17), however, Plaintiff also stated there was a period of time where Defendants failed to pay him any wages (*see id.* 47:11–51:9, 100:23–104:7).  Additionally, Plaintiff affirmatively states in his Affidavit, "I have not abandoned any claims I may have for *federal* minimum wages."  (Pl.'s Aff. ¶ 8).

In April 2010, Defendants moved for summary judgment on six grounds: (1) Plaintiff should not be heard because he comes to the Court with unclean hands due to his status as an illegal immigrant and his failure to pay taxes; (2) F-Navarrete is not liable under the FLSA because he does not qualify as Plaintiff's employer; (3) Plaintiff did not follow the correct procedure under the

Case No. 09-22847-CIV-ALTONAGA/Brown

Florida Minimum Wage Act, FLA. STAT. § 448.110(2), and in any event, Plaintiff abandoned both his state and federal minimum wage claims; (4) Plaintiff will not be able to prove his damages; (5) Plaintiff conceded Defendants did not willfully fail to pay Plaintiff overtime; and (6) Plaintiff does not qualify for the FLSA's individual coverage, and Defendants do not qualify under the FLSA's enterprise coverage. (*See* Mot. 1).

## II. LEGAL STANDARD

Summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The rendering court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Trans.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haynes v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).

## III. ANALYSIS

### A.   Defendants' *In Pari Delicto* Defense

Defendants assert the doctrine of *in pari delicto* bars Plaintiff's suit because (1) he is an illegal immigrant and (2) he has not paid federal income taxes on his earnings. (*See* Mot. 2).[5]

In an earlier Order, the Court observed *Patel v. Quality Inn South*, 846 F.2d 700 (11th Cir. 1988), remains binding Eleventh Circuit Court of Appeals precedent. (*See* Order [ECF No. 30] 2).

---

[5] The Court assumes, without deciding, that an *in pari delicto* defense applies to FLSA cases, which the parties dispute. (*See* Pl.'s Resp. 6; Defs.' Reply 1).

6

Case No. 09-22847-CIV-ALTONAGA/Brown

In *Quality Inn South*, the Eleventh Circuit held illegal immigrants can sue an employer under the FLSA. *See* 846 F.2d at 704–05. Therefore, the Court denied Defendants summary judgment on this ground. (*See* Order 2). The Defendants, by maintaining *in pari delicto* bars an illegal immigrant from suing under the FLSA, are simply repackaging the same argument that the Court previously rejected. For reasons previously stated, the Court rejects Defendants' first *in pari delicto* argument. Therefore, the Court will address only Defendants' second *in pari delicto* argument.

Regarding *in pari delicto*, the Eleventh Circuit has explained that under the defense, "'a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'" *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1354 (11th Cir. 2008) (quoting *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006)). Defendants cite two cases in support of their contention that an employee who fails to pay federal income taxes is barred by *in pari delicto* from suing under the FLSA. *See Neiman v. Provident Life & Accident Ins. Co.*, 217 F. Supp. 2d 1281 (S.D. Fla. 2002); *Edwards*, 437 F.3d 1145. However, neither is analogous to the instant case. In *Neiman* the court refused, as a matter of public policy, to enforce an occupational disability insurance contract for an insured whose occupation was the illegal practice of law. *Neiman*, 217 F. Supp. 2d at 1286–1287. Unlike the insured in *Neiman*, the Plaintiff here was engaged in a legal occupation when employed by Defendants. Plaintiff's wrongdoing – failing to pay federal income taxes on wages already earned – is in no way connected with the Defendants' alleged failure to properly compensate Plaintiff. Additionally, *Edwards* is not factually analogous to the instant case because in *Edwards* the court found *in pari delicto* applied to a bankruptcy trustee, barring that trustee from bringing a complaint

7

Case No. 09-22847-CIV-ALTONAGA/Brown

against other members of a RICO conspiracy.  *See Edwards*, 437 F.3d at 1155–56.  Again, in the instant case the parties did not enter into a conspiracy relating to Plaintiff's failure to pay his taxes or on any other matter, making *Edwards* non-analogous and unpersuasive.

Defendants have not cited, and the Court has not found, any other case law supporting Defendants' contention that Plaintiff's failure to file federal income taxes should bar recovery under the FLSA.  Other courts have similarly concluded that no case law exists to support Defendants' argument.  *See Martinez-Pinillos v. Air Flow Filters, Inc.*, No. 09-cv-22453, 2010 WL 2650912, at *5 n.8 (S.D. Fla. July 1, 2010) (finding that the "[d]efendants cite no case law, and the Court has not found any to support this argument" that the plaintiff's failure to pay federal income taxes requires summary judgment in defendants' favor); *Barrera v. Weiss & Woolrich S. Enters. Inc.*, No. 09-cv-21841, ECF No. 131 at *4 (S.D. Fla. Jan. 25, 2010) (noting "[t]here is no case law supporting Defendants' argument that Plaintiffs' failure to pay federal income taxes requires summary judgment").  Therefore, the doctrine of *in pari delicto* does not bar Plaintiff from recovery under the FLSA.

**B.    Whether Francisco Navarrete is an Employer Under the FLSA**

Defendants assert F-Navarrete is not, as a matter of law, an employer under the FLSA because he lacked operational control over the day-to-day operations of Navas and was not involved in issues regarding pay.  (*See* Mot. 9).  Determining whether an individual is an employer within the meaning of the FLSA is a question of law, however, the historical facts that form the basis to make that determination are questions of fact.  *See Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986).  Under the FLSA, an employer includes "any person acting directly or indirectly in the interest of an

employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The Supreme Court has emphasized the "expansiveness" of the FLSA's definition of employer. *Falk v. Brennan*, 414 U.S. 190, 195, (1973). "Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Carter v. Dutchess Comm. College*, 735 F.2d 8, 12 (2d Cir. 1984)).

"The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA." *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991). The Eleventh Circuit has stated, "'[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" *Wargo*, 803 F.2d at 637–38 (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). Corporate officers have "operational control" when they are "'involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'" *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Wargo*, 803 F.2d at 638).

In *Wargo*, the Eleventh Circuit held the defendant, who was both the president and vice-president of the company, as well as a director and a principal stockholder was not an employer under the FLSA. *See Wargo*, 803 F.2d at 638. The Eleventh Circuit reached this conclusion because the defendant did not "have operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee." *Id*. In making this finding, the Eleventh Circuit focused on the actual role defendant played in the

company, instead of the theoretical role defendant could have played, which the Eleventh Circuit acknowledged was much greater. *See id*.

Likewise, in *Perez* the Eleventh Circuit held that a defendant who was an officer and majority shareholder of the company was not an employer under the FLSA. *See Perez*, 515 F.3d at 1162. The Eleventh Circuit reached this conclusion because "[t]here was insufficient evidence for a jury reasonably to conclude that [defendant] was either involved in the day-to-day operations of the [company] or was directly responsible for the supervision of employees during the relevant years." *Id*. Instead, the uncontradicted evidence showed it was defendant's son who operated the company and made all the decisions about hiring, firing, and compensation during the relevant period. *See id*.

Like the defendants in *Wargo* and *Perez*, F-Navarrete served as a corporate officer and majority shareholder of the company during the relevant period. Also like the defendants in those cases, F-Navarrete was not fully involved in the day-to-day operation of the company and although he had the authority to change Plaintiff's work schedule, raise Plaintiff's hourly wage, and hire or fire Plaintiff and any of Navas' other employees, he never exercised this authority. However, unlike the defendants in *Wargo* and *Perez*, the parties here dispute whether F-Navarrete had "some direct responsibility for the supervision" of Plaintiff. F-Navarrete contends he never gave Plaintiff orders or instructions on how to perform his job. (*See* F-Navarrete Dep. 6:12–14). Contrary to this, Plaintiff maintains F-Navarrete would give him orders approximately once a week and would answer questions and give clarification on his job when J-Navarrete was absent. (*See* Pl.'s Aff. ¶ 6).

Case No. 09-22847-CIV-ALTONAGA/Brown

Defendants question the materiality of this dispute, maintaining it does not create an issue of fact because an employer "must be a corporate officer with operational control (involved in the day-to-day operations of the business) or involved in the setting of wages in order to be an employer under the act." (Reply 7). Defendants cite *Wargo* and *Perez* in support of this position, however, Defendants' reading of those cases is mistaken. As explained above, *Wargo* and *Perez* state that to qualify as an employer, "an officer 'must either be involved in the day-to-day operation *or have some direct responsibility for the supervision of the employee*.'" *Perez*, 515 F.3d at 1160 (quoting *Wargo*, 802 F.2d at 638) (emphasis added). Therefore, the factual dispute between the parties directly relates to whether F-Navarrete falls within the Eleventh Circuit's definition of an employer.

Moreover, Plaintiff cites *Olivas v. A Little Havana Check Cash, Inc.*, 324 F. App'x 839 (11th Cir. 2009), a case factually similar to the instant one. Although *Olivas* is an unpublished decision, it is persuasive authority. In *Olivas* a husband and wife were co-owners of a company where the husband, Mr. Rodriguez, regularly controlled the day-to-day operations of the business. At issue in *Olivas* was whether the wife, Mrs. Rodriguez, also qualified as an employer under the FLSA.

> Here, Mrs. Rodriguez's status as a co-owner, corporate officer, and shareholder of the business is undisputed. . . . Mr. Rodriguez also testified that Mrs. Rodriguez was a signatory to the company's operating bank account during the relevant period. . . . Further, Olivas stated that when Mr. Rodriguez was not present, Mrs. Rodriguez gave instructions, answered questions, and resolved problems that arose during work. . . . A former employee testified that Mr. Rodriguez instructed the employees to call Mrs. Rodriguez with questions whenever he was out of the country. . . . Additionally, Olivas stated that when Mr. Rodriguez was out of the country, Mrs. Rodriguez 'would come in and sit there everyday and watch,' and would ask for the balance of the previous day to account for all of the money. . . .

11

> The district court determined that Mrs. Rodriguez's involvement in the business was insufficient to meet the requirements set forth in [*Wargo*]. The court concluded that 'simply answering questions from Ms. Olivas when Mr. Rodriguez wasn't there is not enough to constitut[e] operational control in light of all of the other facts and circumstances in this case.'. . . The court also concluded that Mrs. Rodriguez 'did nothing to set hours; . . . did nothing to set salaries; . . . did nothing to pay overtime; . . . was not the one who hired . . . Olivas; [and was] not the one who told . . . Olivas what to do generally.'

*Olivas*, 324 F. App'x at 845. The Eleventh Circuit reversed, finding that a jury could reasonably conclude that Mrs. Rodriguez was an employer under the FLSA. *See id.* Specifically, the Eleventh Circuit found a reasonable person could conclude that Mrs. Rodriguez occasionally participated in the day-to-day operations of the business and exercised direct supervision of employees, which qualified her as an employer under the FLSA. *See id.* (citing *Donovan v. Janitorial Servs.*, 672 F.2d 528, 531 (5th Cir. 1982) (noting that occasional control does not diminish the significance of the existence of such control)).

Similar to Mrs. Rodriguez in *Olivas*, Plaintiff maintains that F-Navarrete was: a co-owner, corporate officer, and shareholder of the business; a signatory on the business accounts; and would instruct employees and answer employees' questions when J-Navarrete was absent. Therefore, if Plaintiff's version of the facts is proved true at trial, it would follow that sufficient evidence exists to find, as a matter of law, that F-Naverrete is an employer under the FLSA. Accordingly, a genuine issue of material fact exists regarding F-Navarrete's supervision of Plaintiff which precludes summary judgment on this issue.

Case No. 09-22847-CIV-ALTONAGA/Brown

**C.     Plaintiff's Minimum Wage Claims**

Defendants seek summary judgment on Plaintiff's federal and state minimum wage claims. The state claim can be disregarded because Plaintiff admits in his Response he is not asserting a minimum wage claim under state law.  (*See* Resp. 10).  Regarding the federal claim, Defendants assert Plaintiff has abandoned it.  There does appear to be confusion in Plaintiff's deposition.  At one point Plaintiff states he does not have a minimum wage claim (*see* Pl.'s Dep. 53:12–13, 67:14–15, 113:12–17), however, Plaintiff also states there was a period of time where Defendants failed to pay him any wages  (*see id.* 47:11–51:9, 100:23–104:7).  Plaintiff, however, affirmatively states in his Affidavit, "I have not abandoned any claims I may have for *federal* minimum wages."  (Pl.'s Aff. ¶ 8).  Plaintiff's deposition testimony is unclear and ambiguous, and his Affidavit appropriately clarifies he has not abandoned the federal minimum wage claim.  *See Lane*, 782 F.2d at 1532; *Simmons*, 289 F.3d at 492.  Because Plaintiff has not abandoned the federal minimum wage claim, and abandonment is Defendants' only basis for seeking summary judgment on this claim, summary judgment is denied.

**D.     Whether Plaintiff Can Prove Damages**

Defendants contend they are entitled to summary judgment because Plaintiff cannot prove his damages.  An employee "has the burden of proving that he performed work for which he was not properly compensated."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).[6]  "When

---

[6] *Anderson* was partly abrogated by Congress with the passage of the Portal-to-Portal Act, Pub. L. No. 49-52, 61 Stat. 87 (1947).  *See* 29 U.S.C. § 251; *United States v. Cook*, 795 F.2d 987, 990–91 (Fed. Cir. 1986).  That part of the *Anderson* opinion, however, is not relevant to the instant case.

Case No. 09-22847-CIV-ALTONAGA/Brown

the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Id.* However, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," a relaxed burden-shifting scheme applies. *Id.*; *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1278–79 (11th Cir. 2008). Defendants assert Plaintiff cannot prove damages under either the typical preponderance of the evidence standard or the relaxed burden-shifting scheme.

Defendants first maintain their records are proper and accurate so the preponderance of the evidence standard should apply. The Plaintiff submitted time cards [ECF No. 37-3] maintained by the Defendants that show the number of hours Plaintiff worked on certain days and the total hours Plaintiff worked for certain weeks. However, the majority of the time cards are not labeled with a particular day or week and simply show the hours Plaintiff worked for an unspecified day and the total hours worked for an unspecified week.[7] Additionally, none of the time cards state the rate for which Plaintiff was compensated for his work. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (noting "[i]t is the employer's duty to keep records of the employee's *wages*, *hours*, and other conditions and practices of employment" (emphasis added)). Because Defendants' records fail to establish what hours Plaintiff worked for which weeks, and fail to contain the rate Plaintiff was compensated for his work, they are not "proper and accurate." Plaintiff may prove his damages under the relaxed burden-shifting scheme.

---

[7] The Plaintiff was employed with the Defendants from August 2005 to August 2009. The time cards include two time periods that are clearly labeled and indicate the hours Plaintiff worked: January 2006 to June 2006 and December 2007 to August 2008. However, this establishes only 15 months of the 48 months Plaintiff was employed by Defendants.

Case No. 09-22847-CIV-ALTONAGA/Brown

Under the relaxed burden-shifting scheme, an employee has carried out his burden to prove damages if: (a) "he proves that he has in fact performed work for which he was improperly compensated"; and (b) "he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. If the employee satisfies his burden, the burden shifts to the employer to produce "evidence of the precise amount of work performed" or to negate "the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Anderson*, 328 U.S. at 688; *see also Allen*, 495 F.3d at 1316.

The Plaintiff has demonstrated he worked hours for which he was not properly compensated. Although the time cards do not establish the total hours Plaintiff worked for each week he was employed by Defendants, they do indicate that there were many weeks Plaintiff worked over 40 hours. (*See* Pl.'s Ex. [ECF No. 37-3] 1–65). Defendants also admit there were weeks Plaintiff worked 70 hours. (*See* J-Navarrete Dep. 22:6–10). Additionally, Defendants admit they never paid Plaintiff time and a half if he worked over 40 hours in a week. (*See id.* 26:8–10). Combined, these facts prove Plaintiff worked hours for which he was not properly compensated.

Next, the Plaintiff must provide "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. The Plaintiff contends on average he worked 70 hours a week during the time he was employed by Defendants. (*See* Pl.'s Dep. 58:6–22). The Defendants dispute this average as inaccurate. (*See* J-Navarrete Dep. 22:11–13). Whether 70 hours a week is a reasonable inference to draw from the evidence is not a

15

Case No. 09-22847-CIV-ALTONAGA/Brown

determination for the Court, rather "it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence . . . ." *Anderson*, 328 U.S. at 693. The determination of exactly how many hours Plaintiff was improperly compensated is therefore a question of fact appropriate for a jury.

Defendants appear to add a "specificity" requirement to Plaintiff's burden under the relaxed burden-shifting scheme that does not exist. (*See* Mot. 14). The two cases Defendants cite are inapposite because they do not demonstrate there is such a "specificity" requirement. In *Myers* the employees could not use the relaxed burden-shifting scheme to prove their damages inferentially because the employer kept accurate records of the employees' hours, which is also not the case here. *See Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551–52 (6th Cir. 1999). And in *Gatto* summary judgment was granted to the employers because the employee was unable to produce *any* evidence to show she worked over 40 hours for any week she was employed, which is not the case here. *See Gatto v. Mortg. Specialists of Ill., Inc.*, 442 F. Supp. 2d 529, 535–36 (N.D. Ill. 2006). Rather, as even *Defendants* note, the relaxed standard allows the plaintiff 'to prove damages by way of estimate if liability has already been established." (Mot. 14). Liability has been established here — Plaintiff and Defendants testified that Plaintiff had weeks where he worked 70 hours and was not properly compensated. Plaintiff has therefore established that a FLSA violation occurred; the only question is the extent of the FLSA violation. It is Defendants' burden at trial to produce evidence regarding the specific work Plaintiff performed and to negate the reasonable inference from Plaintiff's evidence.

16

Next, the Defendants contend they are entitled to summary judgment because the Plaintiff was "unable to articulate what his claim is or what he is owed." (Mot. 15). In support, Defendants cite case law setting out a standard for granting summary judgment when a plaintiff fails to offer evidence in support of an element of his claim. (*See id.* 15–17). This argument is meritless. The standard set out in *Anderson* is the appropriate standard for determining whether a plaintiff has presented sufficient evidence of damages to avoid summary judgment in an FLSA case.

Finally, Defendants compare Plaintiff's difficulty remembering the exact number of hours he worked in a particular week over a four year span to a corporate representative who fails to adequately prepare for a deposition, which may warrant the sanction of dismissal. (*See id.* 17). This argument is also without merit. A corporate representative who fails to prepare for a deposition and is unable to testify is not analogous to a plaintiff who is unable to testify because he has forgotten information and cannot refresh his memory because sufficient records do not exist.

**E.      Whether Defendants' Actions Were Willful**

If an employer willfully violates the FLSA, then the employee is eligible for liquidated damages and the statute of limitations period is extended from two years to three years for the employee's claims. 29 U.S.C. § 255(a). Defendants maintain summary judgment on the issue of willfulness is appropriate because Plaintiff abandoned the issue by testifying "that the violation was not willful and that the Defendants acted in good faith and reasonably." (Mot. 17). Plaintiff, however, did not so testify. In his deposition Plaintiff was asked whether he knew if Defendants willfully failed to pay Plaintiff overtime, and Plaintiff responded, "[t]o me they did it intentionally."

Case No. 09-22847-CIV-ALTONAGA/Brown

(Pl.'s Dep. 68:21).[8]  Moments later, when asked the same question, Plaintiff responded, "No, I don't

know." (*Id*. 67:22).  Plaintiff never stated the violation was not willful; Plaintiff simply said he "did

not know."  Additionally, Plaintiff stated Defendants' actions were done to him "intentionally."

These statements by Plaintiff do not suggest he abandoned the issue of willfulness.  Because

abandonment is Defendants' only basis for seeking summary judgment on this issue, summary

judgment is denied.

**F.      FLSA Jurisdiction**

        Finally, Defendants seek summary judgment on Plaintiff's claims based on a lack of

jurisdiction under the FLSA.  To establish jurisdiction under the FLSA, a plaintiff-employee must

show either (1) individual coverage or (2) enterprise coverage.  *See* 29 U.S.C § 206(a); *Scott v. K.W.

Max Invs., Inc.*, 256 F. App'x 244, 247 (11th Cir. 2007).  Defendants contend Plaintiff cannot prove

coverage under either prong.

**1.      Individual Coverage**

        For individual coverage to apply to an employee under the FLSA that employee must be

engaged in commerce or in the production of goods for commerce.  *See* 29 U.S.C § 206(a).  To be

"engaged in commerce" an employee's work must relate to or involve "the movement of persons or

things (whether tangible or intangibles, and including information and intelligence) among the

---

        [8] "In common usage the word 'willful' is considered synonymous with such words as 'voluntary,'
'deliberate,' and '*intentional*.'"  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (quoting
ROGET'S INTERNATIONAL THESAURUS § 622.7, at 479; § 653.9, at 501 (4th ed. 1977) (emphasis added).

Case No. 09-22847-CIV-ALTONAGA/Brown

several States or between any State and any place outside thereof."  29 C.F.R. § 776.9 (1950)

(internal citation omitted).  Specifically an employee

> must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or *travel*.

*Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (emphasis added)

(internal citations omitted).

Plaintiff maintains he is "engaged in commerce" because he traveled outside of the State of

Florida in connection with his employment with Defendants.  It is undisputed Plaintiff traveled in

connection with his employment; the salient question is how frequently this travel occurred.  (*See*

J-Navarrete Dep.17:16–21:8; Pl.'s Aff. ¶ 5).

> If the employee transports material or equipment or other persons across State lines or within a particular State as a part of an interstate movement, it is clear of course, that he is engaging in commerce.  And as a general rule, employees who are regularly engaged in traveling across State lines in the performance of their duties (as distinguished from merely going to and from their homes or lodgings in commuting to a work place) are engaged in commerce and covered by the Act.  On the other hand, it is equally plain that an employee who, in isolated or sporadic instances, happens to cross a State line in the course of his employment, which is otherwise intrastate in character, is not, for that sole reason, covered by the Act.  Nor would a man who occasionally moves to another State in order to pursue an essentially local trade or occupation there become an employee "engaged in commerce" by virtue of that fact alone.

29 C.F.R. § 776.12 (1950) (internal citations omitted).  In *Isaacson v. Penn Community Services,*

*Inc.*, for example, it was determined an employee who had traveled out of state four times during a

nineteen month period was not individually covered by the FLSA because the employee was not "engaged in commerce" due to the isolated nature of his travel.  Nos. 69-878 and 69-879, 1970 WL 794, at *4 (D.S.C. 1970) (reversed on other grounds).

Here, Defendants contend Plaintiff traveled outside Florida on only two occasions and other employees traveled outside of Florida on only one other occasion between August 2005 to August 2009.  (*See* J-Navarrete Dep.17:16–21:8).  Plaintiff maintains, however, that "[he] was sent on at least fifteen trips outside of the state of Florida for the business purposes of A Navas Party Production, to pitch tents and set up party supplies, during the last three years of . . . employment." (Pl.'s Aff. ¶ 5).  Additionally, Plaintiff asserts three other employees accompanied him on these trips out of the state, and on at least five occasions these employees made out of state trips that the Plaintiff did not participate in.  (*See id.*).

The parties have a genuine dispute as to the number of trips Plaintiff took during his employment, however, the question now turns on whether this dispute is material.  The case law is very limited on how much travel is required to qualify as "regular" rather than "isolated or sporadic." In fact, the parties cite no cases and the Court has found only the one case cited above through independent research.  Based on *Isaacson*, if Defendants' version of the facts is proved true, it would follow that two trips in thirty-six months would be "isolated or sporadic" and Plaintiff would not qualify for individual coverage because he was not "engaged in commerce."  However, it is a closer call if Plaintiff can prove he traveled *at least* fifteen times in connection with his employment.  As discussed above, the FLSA regulations direct that "[d]oubtful questions arising in the area between the two extremes must be resolved on the basis of the facts in each individual case."  29 C.F.R. §

Case No. 09-22847-CIV-ALTONAGA/Brown

776.12 (1950).  Having the parties more fully present the disputed facts at trial will help the Court

determine whether Plaintiff was engaged in commerce.  *See Anderson v. Liberty Lobby*, 477 U.S.

242, 255 (1986) (noting that, even absent a manifest material factual dispute, in some cases "the

better course would be to proceed to a full trial" to develop a fuller record in order to have a more

substantial basis for a decision); *Atchison, T. & S.F. Ry. v. Buell*, 480 U.S. 557, 567–71(1987).

Therefore, summary judgment is denied.

### 2.    Enterprise Coverage

An employer is subject to enterprise coverage under the FLSA when it: (1) has an annual

gross volume of sales made or business that exceeds $500,000; and (2) has employees who are either

engaged in commerce or in the production of goods for commerce or handling, selling or otherwise

working on goods or materials that have been moved in or produced for commerce by any person.

*See* 29 U.S.C. § 203(s).  Defendants concede their annual gross sales exceeded $500,000 every year

Plaintiff was employed by Defendants.  (*See* J-Navarrete Dep. 12:4–16).  Therefore, jurisdiction

under the FLSA turns on whether Defendants have at least two employees (a) "engaged in

commerce" or (b) "handling, selling, or otherwise working on goods or materials that have been

moved in or produced for commerce by any person."  29 C.F.R. § 779.238 (1970).

Plaintiff maintains Navas qualifies for enterprise coverage under the FLSA through both

prongs (a) and (b).  Plaintiff contends Navas is "engaged in commerce" due to the out of state travel

Plaintiff and other employees engaged in while Plaintiff was employed by Defendants.  Additionally,

Plaintiff contends Navas qualifies under the second prong because the equipment, namely the tents,

"handled" by Plaintiff and other employees have been "moved in . . . commerce" because the tents

21

Case No. 09-22847-CIV-ALTONAGA/Brown

are manufactured outside of Florida.  Defendants contend that enterprise coverage has not been met under either prong.  Defendants refute Navas "was engaged in commerce" because their employees traveled outside of the State too infrequently.  Additionally, Defendants maintain that prong (b) has not been satisfied because "[n]either Plaintiff nor the company ever purchased goods outside the State of Florida, and could not identify any goods or products that either he or the company purchased from outside of Florida."  (Defs.' Statement of Undisputed Facts ¶ 16).  However, in his deposition J-Navarrete admits he does not know where the tents are made, but that most tents have a label saying "made in the USA."  (*See* J-Navarrete Dep.14:16–22).  These disputes create a genuine issue of material fact that precludes summary judgment on this issue.[9]

## IV. CONCLUSION

Consistent with the foregoing analysis, it is

**ORDERED AND ADJUDGED** that Defendants' Motion **[ECF No. 27]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26th day of July, 2010.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[9] Defendants have not argued that even assuming Plaintiff's facts are true they are entitled to summary judgment on enterprise coverage.  The Court, therefore, assumes these disputes are material.

22