UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  09-22847-CIV-ALTONAGA/Brown

NOLMAN ANTONIO BARRERA
SOLANO,

       Plaintiff,

vs.

A NAVAS PARTY PRODUCTION, INC.,
*et al.*,

       Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, A Navas Party Production, Inc.'s ("Navas[']") and Jose E. Navarrete's (collectively, "Defendants[']") Motion for Judgment as a Matter of Law Pursuant to Federal Rule of Civil Procedure 50(b), Alternatively, Motion for a New Trial Pursuant to Federal Rule of Civil Procedure 59 ("Motion for Judgment") [ECF No. 109], filed November 4, 2010. The Court has carefully reviewed the parties' written submissions and applicable law.

## I.  BACKGROUND

This Fair Labor Standards Act ("FLSA") case proceeded to trial following denial of Defendants' Motion for Summary Judgment [ECF No. 27]. *Solano v. A Navas Party Production, Inc.*, No. 09-22847-Civ, 2010 WL 2949606 (S.D. Fla. July 26, 2010), summarized the facts presented with the summary judgment papers, and the pertinent facts are copied here for ease of reference and to provide background information that is missing from the parties' briefing on the Motion for Judgment:

This case originates from the employment relationship of employee Nolman Antonio Barrera Solano ("Plaintiff") and the employer Defendants. (*See* Compl. [ECF No. 1]). A Navas Party Production, Inc. ("Navas") is co-owned by José E. Navarrete ("J-Navarrete") and Francisco A. Navarrete ("F-Navarrete"), who are brothers. (*See* F-Navarrete Dep. [ECF No. 37-6] 3:18–19). Navas is a party planning company that provides tents, chairs, and tables for events in and outside of Florida. (*See* J-Navarrete Dep. [ECF No. 37-5] 14:5–12; 17:16–19). Navas' annual gross sales have exceeded $500,000 for every year since at least 2005. (*See id.* 12:4–16).

The ownership and control of Navas are divided between F-Navarrete and J-Navarrete. F-Navarrete has been President of Navas since its founding and owns 52.5% of the company. (*See* F-Navarrete Dep. 4:6–7; J-Navarrete Dep. 4:19–24). F-Navarrete and J-Navarrete are the individuals with the most financial authority over Navas; F-Navarrete is a signatory on Navas' business accounts, but he rarely signs the employees' checks. (*See id.* 4:14–18, 7:12–13). J-Navarrete participates in the day-to-day operations of Navas, while F-Navarrete largely does not. (*See id.* 5:22–24). However, F-Navarrete has an office at Navas where he spends anywhere between a half an hour to several hours at a time approximately three days a week. (*See id.* 4:21–5:3). . . .

From August 2005 to August 2009, Plaintiff was employed by Defendants and would assist in the set-up and removal of equipment at events. (*See* J-Navarrete Dep. 9:10–22). Plaintiff maintains that he traveled in connection with work and that "[he] was sent on at least fifteen trips outside of the state of Florida for the business purposes of A Navas Party Production, to pitch tents and set up party supplies, during the last three years of . . . employment." (Pl.'s Aff. [ECF No. 37-7] ¶ 5). Additionally, Plaintiff asserts three other employees accompanied him on these trips out of the state, and on at least five occasions these employees made out of state trips that Plaintiff did not participate in. (*See id.*). However, Defendants contend Plaintiff traveled outside Florida on only two occasions and other employees traveled outside of Florida on only one other occasion between August 2005 to August 2009. (*See* J-Navarrete Dep. 17:16–21:8). Plaintiff, who is in the United States illegally, has not paid any federal income taxes on the wages he earned while employed by Defendants. (*See* Pl.'s Dep. [ECF No. 28-1] 7:4–8:24).

Plaintiff and Defendants agree that at least two employees were assigned to every party setup. (*See* Resp. [ECF No. 36] 18; J-Navarrete Dep. 15:13–15). Plaintiff also maintains that the tents used in Defendants' business are made in Germany. (*See* Pl.'s Aff. ¶ 4). J-Navarrete contends he does not know where the tents are made, but that most tents have a label saying "made in the USA." (*See* J-Navarrete Dep.14:16–22). Defendants also contend, however, that "[n]either Plaintiff nor the company ever purchased goods outside the State of Florida, and could not identify any goods or products that either [Plaintiff] or the company

purchased from outside of Florida." (Defs.' Statement of Undisputed Facts [ECF No. 28] ¶ 16).

*     *     *

In his complaint, Plaintiff alleges a claim for violation of the FLSA's overtime provision. To support his overtime claim Plaintiff submitted time cards maintained by the Defendants that show the number of hours Plaintiff worked on certain days and the total hours Plaintiff worked for certain weeks. (*See* [ECF No. 37-3]). However, the majority of the time cards are not labeled with a particular day or week, but simply show the hours Plaintiff worked for an unspecified day and the total hours worked for an unspecified week. (*See id.*). Supplementing the time cards, Plaintiff also testified that on average he worked 70 hours a week during the time he was employed by Defendants. (*See* Pl.'s Dep. 58:6–22). The Defendants dispute this average as inaccurate, but do concede there were weeks Plaintiff worked 70 hours. (*See* J-Navarrete Dep. 22:6–13). Additionally, Defendants admit they never paid Plaintiff time and a half if he worked over 40 hours in a week. (*See id.* 26:8–10). Also, when asked whether he knew if Defendants willfully failed to pay Plaintiff overtime, Plaintiff responded, "[t]o me they did it intentionally." (Pl.'s Dep. 67:22). However, moments later, when asked the same question, Plaintiff responded, "No, I don't know." (*Id.* 68:21).

In his complaint, Plaintiff also alleges that for a period of time he was not paid at all in violation of the FLSA's minimum wage provision. (*See* Compl. ¶¶ 7–10; Resp. 10). Plaintiff's deposition contains confusing statements regarding this period. At one point Plaintiff stated he does not have a minimum wage claim (*see* Pl.'s Dep. 53:12–13, 67:14–15, 113:12–17), however, Plaintiff also stated there was a period of time where Defendants failed to pay him any wages (*see id.* 47:11–51:9, 100:23–104:7). Additionally, Plaintiff affirmatively states in his Affidavit, "I have not abandoned any claims I may have for *federal* minimum wages." (Pl.'s Aff. ¶ 8).

*Id.* at **1-2 (footnote call numbers and footnotes omitted).

In denying summary judgment the undersigned addressed Defendants' argument that Plaintiff could not prove his damages by either a preponderance of the evidence or pursuant to the relaxed burden-shifting scheme allowed for by *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), which applies in instances where the employer has not kept proper and accurate time records. *See id.* at **7-9. The Order also considered Defendants' assertion that Plaintiff had failed to establish

3

Case No.  09-22847-CIV-ALTONAGA/Brown

enterprise coverage under the FLSA, and hence Plaintiff failed to satisfy jurisdiction under the FLSA. *See id.* at \*11.  At the conclusion of the trial, Defendants moved for judgment under Federal Rule of Civil Procedure 50(a) on these two points, as well as other arguments they reassert now and which are not addressed in this Order.[1]

The jury in its Verdict found as follows: the Plaintiff did not prove he was regularly and recurrently participating in the actual movement of people or things across state lines; the Plaintiff proved Defendants employed two or more employees who regularly and recurrently handled, used, or sold goods or materials that had moved in interstate commerce at some point; the Plaintiff worked more than 40 hours in a workweek without properly being paid overtime; the Plaintiff proved he was not paid minimum wage in at least one workweek; Jose Navarrete was an officer of the corporate Defendant who had day-to-day control over the operations of the company, including the payment of wages to workers; and Francisco Navarrete was not an officer of the corporate Defendant having actual day-to-day control over the operations of the company, including the payment of wages to workers.  (*See* Verdict Form 1-2 [ECF No. 100]).  Because the jury found the Plaintiff was not properly paid overtime and was not paid minimum wage for some of the weeks he worked for the Defendants, the jury was asked to fill out Exhibit A to the Verdict Form, indicating week by week

---

[1] The Defendants also argue they are entitled to a judgment or new trial (1) under the doctrine of *in pari delicto* as the Plaintiff is an illegal immigrant; (2) that as an illegal alien, the Plaintiff is not entitled to relief under the FLSA; and (3) Defendants are entitled to judgment on the issue of willfulness and liquidated damages.  (*See* Mot. 15-23).  Because the Court finds the first two arguments singularly unpersuasive (Defendants clearly knew of the Plaintiff's immigration status as they paid him in cash and did not report his wages) and/or has previously addressed them in the July 26 Order denying summary judgment, they are not considered in this Order.  As to the argument concerning willfulness, "[t]o establish a willful violation [of] the FLSA, [the Plaintiff] must show that the [Defendants] either knew or showed a reckless disregard for the matter of whether [their] conduct was prohibited by the statute." *Palmer v. Stewart Cnty. Sch. Dist.*, 178 F. App'x 999, 1005 (11th Cir. 2006) (citation omitted).  Plaintiff's evidence at trial satisfied this standard.

Case No. 09-22847-CIV-ALTONAGA/Brown

the overtime hours worked, the amount owed for overtime, and the amount paid below minimum wage, if any. (*See id.* Ex. A). The entries made by the jury in Exhibit A correspond to "time cards" entered in evidence by the Plaintiff. (*See* Pl.'s Trial Exhibits ("Tr. Exs.") 4, 14). Indeed, as Plaintiff recognizes, "Plaintiff's time cards entered into evidence virtually mimic the amount of overtime awarded by the jury on a week by week basis . . . . Consequently, it is clear the jury used those dated time records to determine the damages awarded." (Resp. at 3 [ECF No. 112]).

In the present Motion for Judgment, Defendants challenge the jury's conclusion regarding overtime and minimum wage damages, asserting Plaintiff failed to prove damages to a reasonable degree of certainty, and thus they are entitled to judgment. Defendants also maintain no reasonable jury could find Navas was engaged in commerce for purposes of enterprise coverage under the FLSA, and they are entitled to judgment, or in the alternative, to a new trial in which evidence improperly admitted on this issue would be disallowed. The Court briefly summarizes the evidence presented at trial regarding overtime and minimum wage damages and the evidence bearing on the jurisdictional issue of enterprise coverage.

Preliminarily, the matter of punch cards or time cards warrants some discussion. At the commencement of trial, Defendants sought to introduce certain time cards produced to Plaintiff three business days before the trial and objected to by the Plaintiff. The explanation given by Defendants was as follows:

> [D]uring the preparation of the trial, some additional time cards were located. Apparently the set given to the plaintiff initially, there were some weeks that were missing. We believe that's cleared up. We gave them to them on Wednesday, the minute that we found them.

*            *            *

5

> [I]n the nature of a case like this, time cards are very important. The defendants were not able to locate them during the discovery period. It's not like they had them and didn't give them. They had some found later that were stored somewhere separately.

(Trial Transcript Sept. 27, 2010 at 11 ("Sept. 27 Trans.") [ECF No. 216]). While the undersigned ruled the "newly-found" time records could not be introduced in evidence, the Court found Plaintiff opened the door to their introduction because Plaintiff inquired about this very subject in his examination of Jose Navarrete, and all time cards — the ones produced in discovery and the new ones "found" late — were introduced as evidence at trial. (*See* Pl.'s Tr. Exs. 4, 14). The new time records had dates that Defendants wrote in the day they were faxed to Plaintiff's counsel; no dates appear on the earlier time records produced in discovery.[2] (*See* Sept. 27 Trans. 162).

In their opening argument, Defendants argued that the time records the jury would see "are not an accurate reflection of the actual hours the plaintiff worked. Instead, these time-sheets are only accurate to show when the plaintiff punched in at the beginning of the day and when he punched out at the end." (*Id.* 68; *see also id.* 146). According to the Defendants, the Plaintiff "was not working during all of these hours that he was punched in for," because the party-planning business has an "overwhelming amount of down-time" (*id.*; *see also id.* 134-35), approximately one-third of the time (*see id.* 145), during which the workers are free to do whatever they want (*see id.* 140). So, for example, for one particular week, Jose Navarrete testified that of the 77.7 hours shown, 37.7 of those hours were for "down-time." (*Id.* 108).[3] According to Jose Navarrete, the Plaintiff never worked

---

[2] According to the Plaintiff, the new time sheets were "doctored." (Sept. 27 Trans. 114). The time cards produced to the Plaintiff in discovery had the dates erased or "whited" out, while the ones given three days before trial had dates written on them. (*See id.*).

[3] At his deposition, which was read into evidence, Jose Navarrete stated that the totals written on the time cards would be the hours the Plaintiff worked, and that Plaintiff was never paid time-and-a-half if he

Case No.  09-22847-CIV-ALTONAGA/Brown

more than 40 hours in one week  (*see id.*), or 30 to 35 hours (*see id.* 146); yet, Navas paid the

Plaintiff in cash for every hour he appeared as punched in on the time cards.  (*See id.* 131).  Jose

Navarrete testified that for the 25 years Navas has been in business, not a single employee has ever

worked more than 40 hours in a workweek.  (*See id.* 120).  Although Jose Navarrete first testified

the Plaintiff was always paid for his work, he acknowledged Plaintiff was not paid for the two weeks

preceding his termination from Navas.  (*See id.*).

Jose Duarte, a driver for Navas, testified that he sometimes works more than 40 hours per

week, and he is paid time-and-a-half for the hours over 40.  (*Id.*  181).  In contrast, the Plaintiff was

paid the same hourly rate for all hours worked.  (*See* Trial Transcript Sept. 28, 2010 at 30 ("Sept. 28

Trans.") [ECF No. 105]).  As to Defendants' description of "down-time," the Plaintiff testified he

could never use these "blocks of time" for his own purposes.  (*Id.* 88).  According to the Plaintiff,

Navas deducted one hour for dinner any time the workers worked past dinner time.  (*See id.* 93).

The Plaintiff cannot read or speak English (*see id.* 78), does not know how to conduct

mathematical averaging (*see id.* 83, 111), claims he worked on 15 jobs for Navas while outside the

State of Florida (*see id.* 25, 71), believes he was not paid wages for an eight-week period (*see id.* 31,

66), and requested damages of $17,244.75, although he is not sure about the number of hours he

worked overtime or the number of hours for which he was not properly compensated (*see id.* 101).

The Plaintiff does not know what he is owed; he "would leave it up to the conscience of the jury

because" he does not believe the time cards in evidence — neither the undated cards produced in

---

worked over 40 hours in one week.  (*See* Trial Transcript Oct. 4, 2010 at 72-73 ("Oct. 4 Trans.") [ECF No.
106]).  At trial, Mr. Navarrete clarified he was referring to the hours the Plaintiff was punched in and
punched out, but with all the down-time Navas has, the cards do not reflect the reality of the hours worked.
(*See id.* 96).  Mr. Navarrete also stated the Plaintiff was never paid time-and-a-half because the Plaintiff
never worked more than 40 hours in one week.  (*See id.* 97).

Case No.  09-22847-CIV-ALTONAGA/Brown

discovery nor the hand dated ones provided on the eve of trial — are accurate.  (*Id.*).  When asked

if the jury is supposed to guess what he is owed, the Plaintiff responded, "No, but — because I

cannot even give you a figure because I don't have information on those other time cards."  (*Id.*).

The Plaintiff cannot say how much overtime he is owed for the years 2006 to 2009 (s*ee id.* 108), but

he wants overtime awarded for every week of the three-year claim period, for a total of 152 weeks

(*see* Oct. 4 Trans. 21), even though there are some weeks where hours less than 40 are shown to have

been worked (*see id.* 22-23).

Plaintiff admitted he went to trial because he wanted to get as much money as he could,

whether he was entitled to it or not.  (*See* Sept. 28 Trans. 109).  While the Plaintiff's pay scale

increased over the years he worked at Navas, ending at $10 an hour, he cannot recall the exact dates

the pay scales were adjusted.  (*See* Oct. 4 Trans. 11, 15).  Effectively, Plaintiff is claiming an average

of overtime for each week; he claims an average of 30 overtime hours per week because he knows

there were weeks he worked over 100 hours, even though those hours do not appear on the time

cards.  (*See id.* 23-24).  The Plaintiff claims overtime even for weeks where the time cards reflect

a total of as few as 17.5 hours.  (*See id.* 24–25).  The Plaintiff cannot specifically remember the

hours he worked for any given week.  (*See id.* 30).  According to the Plaintiff, it "almost never

happened" that he was completely relieved of duty for significant periods during the

workday.  (*Id.* 43).

Regarding jurisdiction under the FLSA, the jury found individual coverage did not exist

under 29 U.S.C. § 206(a), but did find the Plaintiff had established enterprise coverage under 29

U.S.C. § 203(s).  In order to establish a basis for enterprise coverage, the Plaintiff testified, over

Defendants' objection, that while working for Navas he personally observed labels on the largest

Case No.  09-22847-CIV-ALTONAGA/Brown

tents utilized by Navas that stated the tents were manufactured in Indiana, and that Plaintiff and other employees would regularly set those tents up in 2006, 2007 and 2008 as part of Navas's business. (*See* Sept. 28 Trans. 6, 8).  The Plaintiff estimated that in 2006 and 2007 he traveled outside the State of Florida on Navas business four times each year, and in 2008 he traveled outside the State three to four times.  When traveling out of state, he and the other Navas employees would take tents, chairs, and tables with them.  (*See* Oct. 4 Trans. 65–67).  The Plaintiff also testified he and the others took three to four trips each year from 2006 to 2009.  (*See* Sept. 28 Trans. 25).  Trips to Georgia lasted 13 to 15 days, and trips to South Carolina lasted three to four days.  (*See* Sept. 28 Trans. 25, 36).  At the conclusion of the out-of-state jobs, he and the others would bring the equipment back to Navas.  (*See* Oct. 4 Trans. 69).  The equipment would then be used again for in-state jobs.  (*See id.*).

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 50(a)(1), a judgment as a matter of law is warranted '[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue."  In evaluating a motion for judgment as a matter of law,

> a court must view all the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party.  The motion should be granted only if upon such consideration, the court finds that reasonable people in the exercise of impartial judgment could not arrive at a contrary verdict. The court may not weigh the evidence or decide the credibility of witnesses.

*Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 439 (11th Cir. 1996) (internal citations omitted).  Furthermore, "[t]he nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict

9

Case No.  09-22847-CIV-ALTONAGA/Brown

in evidence to support a jury question.'" *Id.*  (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)).

Motions for new trial are governed by Federal Rule of Civil Procedure 59(a), and may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED. R. CIV. P. 59(a)(1).  "[W]hen considering a motion for new trial, the trial judge may weigh the evidence, but it is proper to grant the motion only if the verdict is against the great, not just the greater, weight of the evidence." *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988) (citing *Watts v. Great Atl. and Pac. Tea Co., Inc.*, 842 F.2d 307, 310 (11th Cir. 1988)).  A new trial is warranted for an evidentiary error "where the error has caused substantial prejudice to the affected party."  *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004) (citations omitted).  To answer the question of whether improperly admitted evidence affected the verdict, a court should consider the number of errors, the closeness of the factual dispute, and the prejudicial effect of the evidence.  *See id.*

## III.  ANALYSIS

### A.     Sufficiency of the Evidence of Damages for Overtime and Minimum Wages

Defendants raise several arguments related to the sufficiency of the evidence presented at trial concerning Plaintiff's entitlement to overtime and minimum wage damages.  The several arguments gleaned from the Motion are: (1) Plaintiff failed to present any evidence concerning what days made up his workweek; (2) Plaintiff presented no evidence as to any workweek showing whether overtime was worked; (3) Plaintiff failed to establish his understanding of "work" under the FLSA; and (4) Plaintiff failed to prove the amount and extent of any minimum wages not paid.

Case No.  09-22847-CIV-ALTONAGA/Brown

     1.    *Plaintiff's Workweek*

     The FLSA provides that "no employer shall employ any of his employees . . . for a workweek

longer than forty hours unless such employee receives compensation for his employment in excess

of the hours above specified at a rate not less than one and one-half times the regular rate at which

he is employed."  29 U.S.C. § 207(a)(1).  An employee claiming a violation of the FLSA overtime

requirement bears the burden of proving by a preponderance of the evidence that there exists an

employer-employee relationship; there was engagement in the activities within the coverage of the

FLSA; the employee worked over 40 hours within a workweek without overtime compensation; and

a definite amount of compensation is due.  *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 892

(E.D. Tex. 1997) (citing cases).  An employee is not entitled to overtime compensation for activities

undertaken "for [the employees'] own convenience, not being required by the employer and not

being necessary for the performance of their duties for the employer."  *Dunlop v. City Elec., Inc.*, 527

F.2d 394, 398 (5th Cir. 1976).

     The FLSA focuses on the workweek as its basic unit.  *O'Brien v. Town of Agawam*, 350 F.3d

279, 298 (1st Cir. 2003) (quoting 29 C.F.R. §§ 776.4(a) ("'The workweek is to be taken as the

standard in determining the applicability of the act.'"); 778.104 ("'The Act takes a single workweek

as its standard . . . .'")).  Indeed, "the FLSA as a whole and the DOL's implementing regulations of

the Act highlight the primacy of the workweek concept."  *Herman v. Fabri-Centers of Am., Inc.*, 308

F.3d 580, 589 (6th Cir. 2002) (citing 29 U.S.C. §§ 207(a)(1), (l), (m)); *see also Reich v. John Alden*

*Life Ins. Co.*, 126 F.3d 1, 7 (1st Cir. 1997) (under the FLSA, "overtime" means "employment in

excess of 40 hours in a single workweek.").  A workweek may be any "fixed and regularly recurring

period of 168 hours  – seven consecutive 24-hour periods.  It need not coincide with the calendar

11

Case No.  09-22847-CIV-ALTONAGA/Brown

week but may begin on any day and at any hour of the day." 29 C.F.R. § 778.105.  Each workweek

stands alone.  *See* 29 C.F.R. §§ 778.103, 778.104.

The Court agrees with Defendants that Plaintiff presented no evidence concerning what his

workweek was.  The Defendants' time cards show different stamps for different days; there are

several instances where the first day of the week on the time record appears as a Wednesday, while

there are other instances where the first day appears as a Thursday or a Saturday.  This defect in the

evidence is not fatal, however.  The Defendants' time records, though incomplete, identify each

workweek separately.  Although the workweeks do not all begin on the same day and the days the

Plaintiff may not have worked or was absent varied, for purposes of their own records, Defendants

appeared to have no problem separating each workweek.  Consequently, because the records identify

each workweek separately and list the total number of hours the Plaintiff appeared punched in at

work, it does not matter what day the Plaintiff's workweek began.

2.    *Damages for Overtime Work Performed*

The only obvious conclusion to be reached from the jury's answers on Exhibit A to the

Verdict Form is that the jury utilized the Defendants' incomplete time records admitted in evidence

to calculate overtime.  In viewing the evidence in the light most favorable to the Plaintiff, the Court

agrees with Plaintiff that Defendants did not point to any time records reflecting the extent of the

alleged and extensive "down-time" to which they testified, "and therefore testimony by Plaintiff that

any downtime was not significant could not be rebutted by the defense." (Resp. 5).  As the Plaintiff

explains,

> Plaintiff responded at trial that at most he would be kept waiting 30-40 minutes
> waiting for a customer not five hours. . . .  Defendants simply had no records to
> account for the downtime, and a reasonable jury was therefore free to reject any

12

Case No.  09-22847-CIV-ALTONAGA/Brown

allegations by Defendants that Plaintiff's damages should be reduced due to down time.

(Resp. 6).  Again, taking the evidence in the light most favorable to Plaintiff, "[t]he jury likely found it very difficult to believe that Plaintiff was doing nothing for 30+ hours per week when the time cards reflected otherwise, and the Defendants had no records at all documenting any alleged downtime."  (*Id.* n.4).

The question presented now by the Defendants' Motion for Judgment is whether the jury's apparent disbelief of Defendants' testimony describing long periods of "down-time" and favorable view of Plaintiff's testimony that his down-time was minimal, combined with Defendants' "time records" showing Plaintiff's punch in and punch out times, provide a sufficient evidentiary basis for the overtime awarded.  To properly answer this question, a review of the law governing the award of overtime damages is necessary.

In the Order of July 26, 2010, the undersigned laid out the law and its application to this case as follows:

> An employee "has the burden of proving that he performed work for which he was not properly compensated."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  "When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records." *Id.*  However, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," a relaxed burden-shifting scheme applies.  *Id.*; *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1278–79 (11th Cir. 2008).  Defendants assert Plaintiff cannot prove damages under either the typical preponderance of the evidence standard or the relaxed burden-shifting scheme.

> Defendants first maintain their records are proper and accurate so the preponderance of the evidence standard should apply.  The Plaintiff submitted time cards [ECF No. 37-3] maintained by the Defendants that show the number of hours Plaintiff worked on certain days and the total hours Plaintiff worked for certain weeks.  However, the majority of the time cards are not labeled with a particular day

13

or week and simply show the hours Plaintiff worked for an unspecified day and the total hours worked for an unspecified week.[7]   Additionally, none of the time cards state the rate for which Plaintiff was compensated for his work.  *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir. 2007) (noting "[i]t is the employer's duty to keep records of the employee's *wages*, *hours*, and other conditions and practices of employment" (emphasis added)).  Because Defendants' records fail to establish what hours Plaintiff worked for which weeks, and fail to contain the rate Plaintiff was compensated for his work, they are not "proper and accurate."   Plaintiff may prove his damages under the relaxed burden-shifting scheme.

Under the relaxed burden-shifting scheme, an employee has carried out his burden to prove damages if: (a) "he proves that he has in fact performed work for which he was improperly compensated"; and (b) "he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687.  If the employee satisfies his burden, the burden shifts to the employer to produce "evidence of the precise amount of work performed" or to negate "the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Anderson*, 328 U.S. at 688; *see also Allen*, 495 F.3d at 1316.

The Plaintiff has demonstrated he worked hours for which he was not properly compensated.  Although the time cards do not establish the total hours Plaintiff worked for each week he was employed by Defendants, they do indicate that there were many weeks Plaintiff worked over 40 hours.  (*See* Pl.'s Ex. [ECF No. 37-3] 1–65).  Defendants also admit there were weeks Plaintiff worked 70 hours.  (*See* J-Navarrete Dep. 22:6–10).  Additionally, Defendants admit they never paid Plaintiff time and a half if he worked over 40 hours in a week.  (*See id.* 26:8–10).  Combined, these facts prove Plaintiff worked hours for which he was not properly compensated.

Next, the Plaintiff must provide "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687.  The Plaintiff contends on average he worked 70 hours a week during the time he was employed by Defendants.  (*See* Pl.'s Dep. 58:6–22).  The Defendants dispute this average as inaccurate.  (*See* J-Navarrete Dep. 22:11–13).  Whether 70 hours a week is a reasonable inference to draw from the evidence is not a determination for the Court, rather "it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence . . . ." *Anderson*, 328 U.S. at 693.  The determination of exactly how many hours Plaintiff was improperly compensated is therefore a question of fact appropriate for a jury.

Defendants appear to add a "specificity" requirement to Plaintiff's burden

Case No.  09-22847-CIV-ALTONAGA/Brown

under the relaxed burden-shifting scheme that does not exist.  (*See* Mot. 14).  The two cases Defendants cite are inapposite because they do not demonstrate there is such a "specificity" requirement.  In *Myers* the employees could not use the relaxed burden-shifting scheme to prove their damages inferentially because the employer kept accurate records of the employees' hours, which is also not the case here.  *See Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 551–52 (6th Cir. 1999).  And in *Gatto* summary judgment was granted to the employers because the employee was unable to produce *any* evidence to show she worked over 40 hours for any week she was employed, which is not the case here.  *See Gatto v. Mortg. Specialists of Ill., Inc.*, 442 F. Supp. 2d 529, 535–36 (N.D. Ill. 2006).  Rather, as even *Defendants* note, the relaxed standard allows the plaintiff 'to prove damages by way of estimate if liability has already been established." (Mot. 14).  Liability has been established here — Plaintiff and Defendants testified that Plaintiff had weeks where he worked 70 hours and was not properly compensated.  Plaintiff has therefore established that a FLSA violation occurred; the only question is the extent of the FLSA violation.  It is Defendants' burden at trial to produce evidence regarding the specific work Plaintiff performed and to negate the reasonable inference from Plaintiff's evidence.

––––––––––––––––––––

[7]  The Plaintiff was employed with the Defendants from August 2005 to August 2009.  The time cards include two time periods that are clearly labeled and indicate the hours Plaintiff worked: January 2006 to June 2006 and December 2007 to August 2008.  However, this establishes only 15 months of the 48 months Plaintiff was employed by Defendants.

*Solano*, 2010 WL 2949606 at **7-8 (some footnote call numbers and footnotes omitted).

Notwithstanding the newly-discovered hand-dated time cards introduced at trial, the Defendants' records failed to establish what hours Plaintiff worked during which weeks and failed to include the rate Plaintiff was compensated for his work.  Thus, even after the Court's observations given to the Defendants before trial in the July 26 Order, Defendants' records continued to be incomplete and inaccurate.  Under the relaxed burden-shifting scheme, the Plaintiff therefore was entitled to prove his overtime damages by showing "he ha[d] in fact performed work for which he was improperly compensated"; and by "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Anderson*, 328 U.S. at 687.

15

Case No.  09-22847-CIV-ALTONAGA/Brown

*Anderson* allowed the plaintiff "to prove damages by way of estimate," *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 602–03 (6th Cir. 2009), because the Plaintiff had already established liability through his testimony, credited by the jury, concerning overtime worked but not paid for, and by Defendants' admission they never paid him overtime wages.  In this case, because of Defendants' own defective record-keeping, Plaintiff did not need to prove his damages with precision. *Anderson*, 328 U.S. at 688.

Narrowing the inquiry, it appears the question presented by Defendants' Motion is whether the Plaintiff satisfied the second element of the burden-shifting scheme; that is, whether Plaintiff produced sufficient evidence from which the jury could determine the amount and extent of his non-compensated work as a matter of just and reasonable inference.  Unembellished, the "issue is not whether the evidence was sufficient for [Defendants] to have won, but whether the evidence was sufficient for [them] to have lost." *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1264–65 (11th Cir. 2008).  And here, there was enough evidence supporting Plaintiff's wage claims for Defendants to have lost.

The Plaintiff testified to an average of 30 overtime hours per week because he remembered weeks where he worked over 100 hours per week.  According to the Plaintiff, "In the years 2006, 2007, 2008, during those years my work hours were similar.  When I remember when my work schedule changed was in 2009, around June until the end of the year." (Oct. 4 Trans. 57).  As he told the jury, "Just imagine, there were many days when I spent the whole day working and then I would also spend the night working and then around 9:00 in the morning the following day, I would take a break for about four hours and then I would start working again." (*Id.*). *See Boyke v. Superior Credit Corp.*, No. 01-CV-0290, 2006 WL 3833544, at *5 (N.D.N.Y. Dec. 28, 2006) ("[I]t is well

16

Case No.  09-22847-CIV-ALTONAGA/Brown

established that the employee may testify [regarding an estimate of overtime hours worked] from his or her present memory and recollection alone." (listing cases)).

Contrary to Defendants' position that there were weeks where 30 or more hours should be considered by the jury to be down-time because the Plaintiff was completely relieved of duty, the Plaintiff controverted this with testimony that such down-time almost never happened. This supports the jury's conclusion that the hours appearing on the employers' punch cards were hours he worked. Even in his deposition testimony read to the jury, Jose Navarrete testified the hours reflected on the punch cards were the hours the Plaintiff worked. And the Plaintiff and Defendants testified the Plaintiff was never paid overtime when he worked more than 40 hours in one week; on this point all parties were in agreement. While the Plaintiff questioned the reliability of the new punch cards provided to him by Defendants a mere three days before trial, the records were nonetheless admitted in evidence and the jury was entitled to consider them and use them in calculating overtime. The jury's verdict indicates it did not believe the Plaintiff did no work for his employer upwards of 30 hours per week while "punched in."

The foregoing summary, presented in the light most favorable to the Plaintiff, satisfies the necessary showing of "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687; *see also Brock v. Norman's Country Market, Inc.*, 835 F.2d 823, 828 (11th Cir. 1988). Under the *Anderson* burden-shifting framework, the Plaintiff was not required to offer "definite and certain" evidence he performed work for which he was not properly compensated. *Anderson*, 383 U.S. at 687. *See also Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 69–70 (2d Cir.1997) (district court credited evidence offered by the Secretary of Labor that was over-inclusive instead of the under-inclusive evidence offered by the

17

Case No.  09-22847-CIV-ALTONAGA/Brown

employer where the employer kept inadequate records); *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351–52 (5th Cir. 1980) (trial court applied *Anderson* in calculating overtime where adequate records were not kept by employer based on "the rough computations of [employee's] subconscious mind").   The Court finds no error in the jury's utilization of the employers' time records, however inadequate and incomplete they were; the jury's crediting of the Plaintiff's testimony concerning his overtime work performed for inadequate compensation; and its discrediting of the Defendants' testimony that all time shown on the punch cards exceeding 40 hours was "down-time" during which the Plaintiff was completely relieved of duty.  In short, Defendants "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [they] kept records in accordance with the requirements of [the FLSA]," *Anderson*, 328 U.S. at 688–89, or complied with their discovery obligations and timely produced the entirety of the time records.

3.    *Plaintiff's Understanding of Work*

Defendants complain that Plaintiff never testified about or presented evidence as to what his understanding of "work" is under the FLSA.  (*See* Mot. 9).  According to Defendants, "[w]hen considering that the Plaintiff failed to establish a basic understanding of what 'work' is, it cannot just be assumed that any testimony referring to 'work' performed was 'work' that is compensable under the FLSA."  (*Id.*).  Defendants' assumption that the Plaintiff needed to establish this "foundation" (*id.* 10) to recover on his overtime claim is not supported by any citation to authority, except for the definition of work in the FLSA.  The Supreme Court has defined work under the FLSA as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944).   This strikes the Court as a

18

Case No.  09-22847-CIV-ALTONAGA/Brown

straightforward, common sense understanding of the meaning of the word "work."  Because Defendants do not contend or show that Plaintiff had some other idea of work in mind during his testimony, this argument warrants no further discussion.

4.      *Minimum Wages*

Aside from re-arguing an issue dealt with in the July 26 Order regarding Defendants' contention that Plaintiff abandoned his minimum wage claim, *see Solano*, 2010 WL 2949606, at * 7, Defendants assert the Plaintiff did not present sufficient evidence concerning minimum wages that were not paid to him.  The Court does not agree.  The Plaintiff testified he was not paid any wages for an eight-week period, and even Jose Navarrete admitted to not paying the Plaintiff for the last two weeks of his employment.  The credibility determination was committed to the sound judgment of the jury and will not be set aside.

**B.      Sufficiency of the Evidence Establishing Enterprise Coverage**

Defendants next argue they are entitled to judgment, or at a minimum a new trial, due to the insufficiency of the evidence regarding enterprise coverage and/or errors in the admission of evidence concerning the words appearing on labels affixed to Defendants' large tents.  The Court explained enterprise coverage under the FLSA in the July 26 Order as follows:

> An employer is subject to enterprise coverage under the FLSA when it: (1) has an annual gross volume of sales made or business that exceeds $500,000; and (2) has employees who are either engaged in commerce or in the production of goods for commerce or handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person.  *See* 29 U.S.C. § 203(s). Defendants concede their annual gross sales exceeded $500,000 every year Plaintiff was employed by Defendants.  (*See* J-Navarrete Dep. 12:4–16).  Therefore, jurisdiction under the FLSA turns on whether Defendants have at least two employees (a) "engaged in commerce" or (b) "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."  29 C.F.R. § 779.238 (1970).

19

Case No.  09-22847-CIV-ALTONAGA/Brown

    Plaintiff maintains Navas qualifies for enterprise coverage under the FLSA
through both prongs (a) and (b).  Plaintiff contends Navas is "engaged in commerce"
due to the out of state travel Plaintiff and other employees engaged in while Plaintiff
was employed by Defendants.  Additionally, Plaintiff contends Navas qualifies under
the second prong because the equipment, namely the tents,  "handled" by Plaintiff
and other employees have been "moved in . . . commerce" because the tents are
manufactured outside of Florida.

*Solano*, 2010 WL 2949606, at * 11.

    Recently, the Eleventh Circuit had occasion to address the definitions of "goods" and

"materials" for purposes of enterprise coverage in *Polycarpe v. E&S Landscaping Service, Inc.*, 616

F.3d 1217 (11th Cir. 2010).  The court explained items must have a "significant connection with the

employer's commercial activity;" it is not enough to "somehow internally and incidentally consume

the item."  *Id.*  at 1226.  Thus, using china plates produced out of state as an example, "for a caterer

that uses the china plates while providing catering services, the plates count as 'materials' because

they have a significant connection to the business's commercial activity of catering."  *Id.*  In contrast,

for an accounting firm "that uses the same china plates as objects of decoration mounted on its lobby

wall, the china plates cannot count as 'materials' because the plates have no significant connection

to the business's accounting work."  *Id.*  (footnote call number omitted).

    The jury was presented evidence of a party planning company that regularly handled and

worked with goods that moved in interstate commerce.  The Plaintiff and other employees on several

occasions during the years in question took the Defendants' goods (tables, chairs, tents) and traveled

to other states where they would install and deliver them, thereafter retrieving them and returning

with them for continued use in Florida.  This was sufficient evidence for the jury to conclude these

goods and materials had a significant connection with the Defendants' commercial activity and were

not incidentally consumed or used, thus satisfying the Plaintiff's burden to show enterprise coverage.

20

Case No.  09-22847-CIV-ALTONAGA/Brown

Defendants continue to object to the introduction of Plaintiff's testimony that he saw labels affixed to the Defendants' large tents while handling them that stated the tents were manufactured in Indiana.  (The name of the state Indiana is the same in the Spanish language as it is in the English language).  Defendants objected before and during trial, and again in the present Motion, on the grounds of "1)  best evidence; 2) predicate; 3) hearsay; and 4) authenticity (the label cannot be self-authenticating if it is not itself admitted into evidence)."  (Mot. 13) (internal footnote omitted).  Regarding the case law cited by Defendants in their trial memorandum [ECF No. 83] and supplement [ECF No. 88], at the time the Court decided this question it indicated it found none of the cases relied on by Defendants supported the exclusion of the Plaintiff's anticipated trial testimony about the "Indiana" large tents.  The undersigned understood the Plaintiff was going to offer testimony describing words that appeared on the Defendants' own products.

In this regard, the parties are directed to the discussion in 31 C. Wright & V. Gold, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 7164 at 314–15 (2000), which provides a more reasoned and better supported explanation for the evidentiary ruling under challenge than the Court was able to give during the trial:

> An item that has tangible form but bears no communicative symbols cannot be a writing or recording because it lacks language.  Thus, the best-evidence doctrine does not apply to secondary evidence concerning a bag of cocaine, a bloody knife, and other so-called "uninscribed chattels."  But many items that are not primarily made to communicate are nonetheless inscribed with markings that indicate origin, ownership, or other matters.  In fact, almost all goods manufactured in a modern economy bear such markings.  For example, while an automobile is not primarily intended as a vehicle of communication, it still bears symbols identifying letters and numbers.  Other examples include items bearing a person's monogram or trade inscription, identification badges, tombstones, baggage checks, serial numbers, and the like.  Courts have struggled with the application of the best-evidence doctrine to these inscribed chattels since producing in court the original of such items is often inconvenient and the risk that secondary evidence may be in error is usually small.

21

Case No.  09-22847-CIV-ALTONAGA/Brown

> Several courts and commentators have suggested that a trial judge should have the discretion to weigh these factors in determining whether to apply the best-evidence doctrine to inscribed chattels.

*Id.* (footnote call numbers and footnotes omitted).

The Court remains unpersuaded by Defendants' objections to the testimony of the Plaintiff describing Defendants' large tents including the labels affixed to them stating the tents were manufactured in Indiana.  Defendants' argument that the tents are the best evidence and should have been introduced finds no support.  *See United States v. Duffy*, 454 F.2d 809, 812 (5th Cir. 1972) ("When the disputed evidence, such as the shirt in this case, is an object bearing a mark or inscription, and is, therefore, a chattel *and* a writing, the trial judge has discretion to treat the evidence as a chattel or as a writing.") (emphasis in original).  Without question it would have been highly inconvenient to require the Plaintiff to subpoena from the Defendants one or more of the large tents and bring those in to show the jury the Indiana label.  Furthermore, assuming the "made in Indiana" label testimony constitutes hearsay, of the parties, the Defendants were in the better position to test the accuracy and reliability of the Plaintiff's description, as it was the Defendants who had the large tents in their warehouse and they could have easily examined them to check for the Indiana labels and transported them to court to display them if they did not in fact have those labels.  *See, e.g., Frazier v. Cont. Oil Co.*, 568 F.2d 378, 382 (5th Cir. 1978) ("The primary reason for excluding hearsay evidence is the lack of opportunity to test the truth of such evidence through cross-examination. . . . [T]he dangers inherent in hearsay testimony can be obviated by a requirement that such statements be trustworthy and necessary.") (footnote call numbers omitted).

In short, the Court finds Plaintiff presented sufficient evidence concerning FLSA enterprise coverage, and the Court is unpersuaded that any evidentiary error caused substantial prejudice to

22

Case No.  09-22847-CIV-ALTONAGA/Brown

Defendants.  The jury's decision will not be disturbed.

### IV.  CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants, A Navas

Party Production, Inc.'s and Jose E. Navarrete's Motion for Judgment as a Matter of Law Pursuant

to Federal Rule of Civil Procedure 50(b), Alternatively, Motion for a New Trial Pursuant to Federal

Rule of Civil Procedure 59 **[ECF No. 109]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of January, 2011.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record